TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel:   718) 762-1324
Fax:   (718) 762-1342
*Attorney for the Plaintiff*



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————— X

JI LI, JIANHUI WU, BIN ZHANG, DE PING ZHAO, and KAI ZHAO, *on behalf of themselves and others similarly situated*

        *Plaintiffs,*

v.

ICHIRO SUSHI, INC., d/b/a ICHIRO SUSHI RESTAURANT,
NEW ICHIRO SUSHI INC. d/b/a ICHIRO SUSHI RESTAURANT,
ICHIRO ASIAN FUSION, INC. d/b/a ICHIRO FUSION,
HIU CHEN, VINCENT CHAN, WINSON CHAN, JOE CHOW,
JAME WANG,
JOHN DOE and JANE DOE

        *Defendants.*

—————————————————————— X

**Case No:**

**29 U.S.C. § 216(b) COLLECTIVE ACTION & F.R.C.P. 23 CLASS ACTION COMPLAINT**

Plaintiffs Ji Li, Jianhui Wu, Bin Zhang De Ping Zhao, and Kai Zhao (hereafter referred to as "Plaintiffs"), on behalf of themselves and other similarly situated, by and through their attorney, Troy Law, PLLC, hereby bring this complaint against Defendants Ichiro Sushi, Inc, d/b/a Ichiro Sushi Restaurant, New Ichiro Sushi Inc. d/b/a Ichiro Sushi Restaurant, And Ichiro Asian Fusion, Inc. d/b/a Ichiro Fusion (collectively as "Corporate Defendants"), and  Hiu Chen, Vincent Chan, Winson Chan, Jame Wang, John Doe and Jane Doe (collectively as "Owner/ Operator Defendants") and allege as follows:

**INTRODUCTION**

1.  This action is brought by Plaintiffs, on their behalves, as well as other employees similarly situated, against Defendants for alleged violations of the Federal Labor Standards Act,

("FLSA") 29 U.S.C. § 201 *et seq.* and of the New York Labor Law (NYLL), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices

2. Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay its employees, including Plaintiffs, compensation for all hours worked, minimum wage, and overtime compensation for all hours worked over forty (40) each workweek.

3. Defendants refused or failed to record all of the time that Plaintiffs and similarly situated employed by Corporate Defendants work or worked, including work done in excess of forty hours each week. Upon information and belief, pursuant to this unlawful policy, pattern and/or practice, Defendants shave time from time records.

4. Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid wages and minimum wages, (2) unpaid overtime wages, (3) liquidated damages, (4) prejudgment and post-judgment interest; and (5) attorneys' fees and costs.

5. Plaintiffs further allege pursuant to New York Labor Law § 650 *et seq.* and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid wages and minimum wages, (2) unpaid overtime compensation, (3) unpaid "spread of hours" premium for each day they worked ten (10) or more hours, (4) up to two thousand five hundred dollars ($2,500) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (5), up to two thousand five hundred dollars ($2,500) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (6)

liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act; (7) prejudgment and post-judgment interest; and (8) attorney's fees and costs.

6.  Plaintiffs allege that Defendants breached an implied contract by failing to reimburse Plaintiffs for expenses paid for the purchase and maintenance of bicycles; purchase, maintenance and cost of battery for electric bicycles; and mileage reimbursement for motorcycle delivery mileage, if applicable.

## JURISDICTION AND VENUE

7.  This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

8.  Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

9.  Plaintiff Ji Li ("Li") was employed by Defendant Ichiro Sushi, Inc. d/b/a Ichiro Sushi Restaurant located at 1694 2nd Avenue, New York, NY 10128 from on or about August 24, 2012 to May 29, 2013 as a delivery man.

10. Plaintiff Jianhui Wu ("Wu") was employed by Defendant Ichiro Sushi, Inc. d/b/a Ichiro Sushi Restaurant located at 1694 2nd Avenue, New York, NY 10128 from on or about July 16, 2013 to October 6, 2014.

11. Plaintiff Bin Zhang ("Zhang") was employed by Defendant Ichiro Sushi, Inc. d/b/a Ichiro Sushi Restaurant located at 1694 2nd Avenue, New York, NY 10128 from May 2012 to July 2013, and again from June 1, 2014 to July 15, 2014 as a delivery man.

12. Plaintiff De Ping Zhao was employed by Defendant Ichiro Sushi, Inc. d/b/a Ichiro Sushi Restaurant located at 1694 2nd Avenue, New York, NY 10128 from May 2012 to on or about June 1, 2014 as a delivery man.

13. Plaintiff Kai Zhao was employed by Defendant Ichiro Sushi, Inc. d/b/a Ichiro Sushi Restaurant located at 1694 2nd Avenue, New York, NY 10128 from September 2010 to April 2014 and again from November 2013 to the present as a delivery man.

## DEFENDANTS

### Corporate Defendants

14. Defendant Ichiro Restaurant, Inc. d/b/a Ichiro Restaurant is a domestic business corporation organized under the laws of the State of New York on July 13, 2010, with a principal address at 1694 2nd Avenue, New York, NY 10128 ("Ichiro 2nd Avenue").

15. Upon information and belief, Ichiro Restaurant, Inc. is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year. Upon information and belief, Ichiro Restaurant, Inc. purchased and handled goods moved in interstate commerce.

16. Upon information and belief, Defendant Ichiro Sushi, Inc. d/b/a Ichiro Restaurant is a domestic business corporation organized under the laws of the State of New York on May 24, 2010, with a principal address at 1694 2nd Avenue, New York, NY 10128 ("Ichiro 2nd Avenue").

17. Upon information and belief, Ichiro Sushi, Inc. is a business engaged in interstate commerce

that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year. Upon information and belief, Defendant Ichiro Sushi, Inc. purchased and handled goods moved in interstate commerce.

18. Defendant New Ichiro Sushi, Inc. d/b/a Ichiro Restaurant is a domestic business corporation organized under the laws of the State of New York on June 17, 2013, with a principal address at 1694 2nd Avenue, New York, NY 10128 ("Ichiro 2nd Avenue").

19. Upon information and belief, New Ichiro Sushi, Inc. is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year. Upon information and belief, New Ichiro Sushi, Inc. purchased and handled goods moved in interstate commerce.

20. Defendant Ichiro Asian Fusion, Inc. d/b/a Ichiro Restaurant is a domestic business corporation organized under the laws of the State of New York on May 4, 2011, with a principal address at 80 Mamaroneck Ave., White Plains NY 10601 ("Ichiro White Plains").

21. Upon information and belief, Ichiro Asian Fusion, Inc. is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year. Upon information and belief, Ichiro Asian Fusion, Inc. purchased and handled goods moved in interstate commerce.

22. Upon information and belief, Ichiro 2nd Avenue and Ichiro White Plains are members of a restaurant chain known as Ichiro Restaurant.

23. Upon information and belief, at all times relevant to this action, Corporate Defendants do or did business as Ichiro Restaurant, engaged in substantially the same work in substantially the same working conditions under substantially same supervisors.

24. Upon information and belief, Corporate Defendants are considered the same employer under

the New York Anti-Shirt Changer Law, NYLL §219.4, because "employees or the subsequent employer are engaged in substantially the same work in substantially the same working conditions under substantially the same supervisors."

25. Upon information and belief, at all times relevant to this action, Ichiro Restaurant is a sit-down Japanese sushi restaurant business offering take-out and delivery options open seven days a week.

26. At all times relevant herein, Ichiro Restaurant was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

27. At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Ichiro Restaurant.

***Owner/ Operator Defendants***

28. Upon personal knowledge of Plaintiffs, two individuals primarily determine their rates of pay, work schedule, work load and employment: John Doe and Jane Doe.

29. Upon personal knowledge of Plaintiffs, John Doe and Jane Doe are husband and wife.

30. Upon personal knowledge of Plaintiff, John Doe, who is known as "Boss" to Plaintiffs, works at the Sushi Bar and oversees Ichiro New York, acts intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Ichiro Restaurant.

31. Upon personal knowledge of Plaintiff, Jane Doe, who is known as "Lady Boss" to Plaintiffs, works as a receptionist and oversees Ichiro New York, acts intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and

severally liable with Ichiro Restaurant.

32. Upon information and belief, Hui Chen is the Chief Executive Officer and Chairman of Ichiro Sushi, Inc. d/b/a Ichiro Restaurant and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Ichiro Restaurant.

33. Upon information and belief, Vincent Chan is a Manager of Ichiro Sushi, Inc. d/b/a Ichiro Restaurant and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Ichiro Restaurant.

34. Upon information and belief, Winson Chan is a Manager of Ichiro Sushi, Inc. d/b/a Ichiro Restaurant and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Ichiro Restaurant.

35. Upon information and belief, Joe Chow is a Manager of Ichiro Sushi, Inc. d/b/a Ichiro Restaurant and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Ichiro Restaurant.

36. Upon information and belief, Jame Wang is the Chief Executive Officer of Ichiro Restaurant, Inc. d/b/a Ichiro Restaurant and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Ichiro Restaurant.

37. Plaintiffs have fulfilled all conditions precedent to the institution of this action and/ or condition have been waived.

## STATEMENT OF FACTS

38. Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

39. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned minimum wages, overtime compensation, and to reimburse Plaintiffs for the purchase and maintenance of their delivery vehicles.

40. While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

41. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs with Time of Hire Notice detailing rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

42. Defendants knew that the nonpayment of minimum wage, overtime pay, New York's "spread of hours" premium for every day in which they worked over 10 hours, expenses of the purchase, repair, utilization and maintenance of electric bicycles for delivery would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

43. Pursuant to NYCRR Part 146-2.2 and 29 USC 203 (m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of the tip credit.

44. Defendants never furnished any notice of their use of tip credit since they failed to provide paystubs to Plaintiffs on their paydays every half a month.

45. Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

46. Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

47. Upon information and belief, Defendants failed to keep records in order to mitigate liability for their wage violations.

48. Upon personal knowledge of Plaintiffs, an electric bicycle costs around one thousand five hundred dollars ($1,500) and has a two year life span.

49. The electric bicycle battery costs five hundred dollars ($500) and lasts for a year.

50. The maintenance of the bicycle costs around five hundred dollars ($500) each year.

51. On average, each Plaintiff spends one thousand seven hundred and fifty dollars ($1,750) on the purchase, repair, utilization and maintenance of electric bicycles each year.

*Plaintiff Ji Li*

52. On or about August 24, 2012, Plaintiff Ji Li was hired by Defendants to work as a deliveryman at Ichiro Restaurant located at 1694 2nd Avenue, New York, NY 10128.

53. Between August 24, 2012 and December 22, 2012, Li worked from around 11:00-15:00 and again from 17:00 to 22:00 for around nine (9) hours a day, six (6) days a week, with Monday off.

54. During this period, Li worked more than fifty four (54) hours each workweek.

55. Between December 23, 2012 to January 15, 2013, Li worked from around 11:00 to 22:00, seven (7) days a week with no days off.

56. Between January 16, 2013 and May 29, 2013, Li worked from around 11:00 to 22:00, six

(6) days a week with Mondays off.

57. During this period, Li would break for one (1) hour for lunch from around 14:30 to 15:30 for four (4) of the six (6) days each workweek. For two (2) of the six (6) days, Li would have no break but do side work between 14:30 and 15:30.

58. During this period, Li worked more than sixty two (62) hours each workweek.

59. At all relevant times, Li was not given a fixed time for dinner or breakfast. He has approximately ten minutes to eat while on duty.

60. Between August 24, 2012 and January 31, 2013, Li was paid a flat fee of seven hundred dollars ($700) each month.

61. Between February 1, 2013 and May 29, 2013, Li was paid a flat fee of eight hundred dollars ($800) in cash every month.

62. Li was not compensated at least the hourly minimum wage for each hour worked.

63. Li was not compensated at least at one-and-one-half of the minimum wage or his calculated hourly wage, whichever is greater, for all hours worked above forty (40) in each workweek.

64. Li was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours.

65. Defendants required Li to use and maintain a delivery vehicle to benefit Defendants' business. Defendants also required Li maintain the vehicle. Defendants did not compensate for the purchase, repair, maintenance, utilization of delivery bicycle/motorcycle according to state and federal labor laws.

*Plaintiff Jianhui Wu*

66. On or about July 16, 2013, Plaintiff Jianhui Wu was hired by Defendants to work as a deliveryman at Ichiro Restaurant located at 1694 2nd Avenue, New York, NY 10128.

67. Between July 16, 2013 and September 5, 2014, Wu worked eleven (11) hours a day for three (3) days (from 11:00 to 22:00) and for ten and a half (10.5) hours a day for three (3) days (from 12:00 to 22:30).

68. During this period, Wu worked more than sixty four and a half (64.5) hours each workweek.

69. Between September 6, 2014 and October, 6, 2014, Wu worked eleven (11) hours a day for three (3) days (from 11:00 to 22:00), for ten and a half (10.5) hours a day for two (2) days (from 12:00 to 22:30), and for four and a half (4.5) hours for a day.

70. During this period, Wu worked more than fifty eight and a half (58.5) hours each workweek.

71. Between July 16, 2013 and September 30, 2013, Wu was paid a flat fee of eight hundred dollars ($800) each month.

72. Between October 1, 2013 and October 6, 2014, Wu was paid a flat fee of nine hundred dollars ($900) in cash every month.

73. Wu was not compensated at least the hourly minimum wage for each hour worked.

74. Wu was not compensated at least at one-and-one-half of the minimum wage or his calculated hourly wage, whichever is greater, for all hours worked above forty (40) in each workweek.

75. Wu was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours.

76. Defendants required Wu to use and maintain a delivery bicycle to benefit Defendants' business. Defendants also required Wu maintain the bicycle.

77. Defendants did not compensate for the purchase, repair, maintenance, utilization of delivery bicycle according to state and federal labor laws.

***Plaintiff Bin Zhang***

78. In May 2012, Plaintiff Bin Zhang was hired by Defendants to work as a deliveryman at Ichiro Restaurant located at 1694 2nd Avenue, New York, NY 10128.

79. Between May 2012 and July 2013, Zhang worked seven and a half (7.5) hours a day for four (4) days (from 16:30 to 24:00) and twelve (12) hours a day for two (2) days (from 11:00 to 23:00).

80. During this period, Zhang worked more than fifty four (54) hours each workweek.

81. Between June 1, 2014 to July 15, 2014, Zhang worked seven and a half (7.5) hours a day for four (4) days (from 16:30 to 24:00), twelve (12) hours for a day each week (from 11:00 to 23:00), and thirteen (13) hours for a day each week (from 11:00 to 24:00).

82. During this period, Zhang worked more than fifty five (55) hours each workweek.

83. Between May 1, 2012 and July 31, 2013, Zhang was paid a flat fee of five hundred dollars ($500) each month.

84. Between June 1, 2014 and July 15, 2014, Zhang was paid a flat fee of eight hundred dollars ($800) in cash every month.

85. Zhang was not compensated at least the hourly minimum wage for each hour worked.

86. Zhang was not compensated at least at one-and-one-half of the minimum wage or his calculated hourly wage, whichever is greater, for all hours worked above forty (40) in each workweek.

87. Zhang was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours.

88. Defendants required Zhang to use and maintain a delivery vehicle to benefit Defendants' business. Defendants also required Zhang to maintain the vehicle.

89. Between May 2012 and July 2013, Bin Zhang utilized an electric bicycle he purchased for

his job as deliveryman for Ichiro Restaurant to deliver takeout for Ichiro Restaurant.

90. Between June 1, 2014 and July 15, 2014, Bin Zhang utilized a motorcycle he purchased for his job as deliveryman for Ichiro Restaurant.

91. During this period Bin Zhang, like all deliverymen at Ichiro Restaurant, delivered an average of thirty (30) orders each day within an average distance of sixth tenth (0.6) miles per order from Ichiro Restaurant, for an average of thirty six (36) miles per day.

92. Defendants did not compensate Bin Zhang for the purchase, repair, maintenance and utilization of the electric bicycle and motorcycle, according to state and federal labor laws.

**Plaintiff De Ping Zhao**

93. In May 2012, Plaintiff De Ping Zhao was hired by Defendants to work as a deliveryman at Ichiro Restaurant located at 1694 2nd Avenue, New York, NY 10128.

94. Between May 2012 and June 2014, De Ping Zhao worked eight (8) hours a day for two (2) days (from 16:00 to 24:00) and six (6) hours a day for four (4) days (from 18:00 to 24:00).

95. At all relevant times, De Ping Zhao was required to stay after his designated shifts for around half an hour each day.

96. At all relevant times, De Ping Zhao was not given meal breaks. Instead, he is on duty at all times of his shift and is required to eat his dinner in around ten minutes when there are no delivery orders.

97. During this period, De Ping Zhao worked more than forty three (43) hours each workweek.

98. Beginning in May 2012, De Ping Zhao was paid fifteen dollars ($15) a day for days where he worked six (6) hours and twenty dollars ($20) a day for days where he worked eight (8) hours, for an average of one hundred dollars ($100) each workweek.

99. De Ping Zhao was subsequently paid twenty dollars ($20) a day for days where he worked six

(6) hours and twenty five dollars ($25) a day for days where he worked eight (8) hours, for an average of one hundred and thirty dollars ($130) each workweek.

100.     De Ping Zhao was not compensated at least the hourly minimum wage for each hour worked.

101.     De Ping Zhao was not compensated at least at one-and-one-half of the minimum wage or his calculated hourly wage, whichever is greater, for all hours worked above forty (40) in each workweek.

102.     Defendants required De Ping Zhao to use and maintain a delivery vehicle to benefit Defendants' business. Defendants also required De Ping Zhao maintain the vehicle.

103.     From May 2012 to October 2013, Defendants did not for compensate De Ping Zhao for the purchase, repair, maintenance and utilization of his electric bicycle according to state and federal labor laws.

104.     Beginning November 2013, De Ping Zhao switched to a gasoline-fueled motorcycle to make his deliveries.

105.     During this period Bin Zhang, like all deliverymen at Ichiro Restaurant, delivered an average of thirty (30) orders each day within an average distance of sixth tenth (0.6) miles per order from Ichiro Restaurant, for an average of thirty six (36) miles per day.

106.     Defendants compensated De Ping Zhao five dollars ($5) each day for gasoline.

107.     This did not fully compensate De Ping Zhao for the purchase, repair, maintenance, and utilization of his delivery motorcycle according to state and federal labor laws.

*Plaintiff Kai Zhao*

108.     On September 20, 2010, Plaintiff Kai Zhao was hired by Defendants to work as a deliveryman at Ichiro Restaurant located at 1694 2nd Avenue, New York, NY 10128.

109.    At all relevant times, Kai Zhao was not given meal breaks. Instead, he is on duty at all times of his shift and is required to eat his lunch in around ten minutes when there are no delivery orders.

110.    Between September 20, 2010 and April 30, 2012 and again between November 2013 to the present day, Kai Zhao worked eleven (11) hours a day for four (4) days (from 11:00 to 22:00), for ten and a half (10.5) hours a day for one (1) day (from 12:00-22:30) and for four and a half (4.5) hours for one (1) day (from 18:00 to 22:30).

111.    During both periods, Kai Zhao worked more than fifty nine (59) hours each workweek.

112.    At all relevant times, Kai Zhao was paid eight hundred dollars ($800) per month in cash.

113.    Kai Zhao was not compensated at least the hourly minimum wage for each hour worked.

114.    Kai Zhao was not compensated at least at one-and-one-half of the minimum wage or his calculated hourly wage, whichever is greater, for all hours worked above forty (40) in each workweek.

115.    Kai Zhao was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours.

116.    Defendants required Kai Zhao to use and maintain a delivery bicycle to benefit Defendants' business. Defendants also required Kai Zhao maintain the bicycle.

117.    Defendants did not for compensate Kai Zhao for the purchase, repair, maintenance, and utilization of his delivery bicycle according to state and federal labor laws.

## COLLECTIVE ACTION ALLEGATIONS

118.   Plaintiffs bring this action individually and as class representative individually and on behalf of all other and former non-exempt deliverymen, servers, busboys, and kitchen staff who have been or were employed by the Defendants for up to last six (6) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated for hours worked, or failed to receive minimum wages, and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

119.   Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants at Ichiro Sushi Restaurant on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

120.   All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P 23.

### *Numerosity*

121.   The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the

precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

122. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a.    Whether Defendant employed Plaintiffs and the Class within the meaning of the New York law;

    b.    Whether Defendants paid Plaintiffs and Class members the minimum wage for all hours worked;

    c.    Whether Plaintiffs and Class members are entitled to overtime under the New York Labor Law;

    d.    Whether Defendants maintained a policy, pattern and/or practice of requiring Plaintiffs and Rule 23 Class to purchase and utilize bicycles for making deliveries, whether those bicycles were tools of trade, and whether Defendants maintained a policy, pattern and/or practice of failing to compensate them for the purchase and/or maintenance of those bicycles;

    e.    Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

    f.    Whether Defendants maintained  policy, pattern and/or practice of failing to provide requisite statutory meal periods;

    g.    Whether Defendants provided a Time of Hire Notice detailing rates of pay and

payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or or timely thereafter;

h.  Whether Defendants provided detailed paystubs listing employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day; and

i.  At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

*Typicality*

123.  Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, and overtime compensation. Defendants' corporate wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

124.  Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiffs and other similarly situated employees.

125.  Defendants knowingly and willfully operated their business with a policy of failing to provide timely Time of Hire Notice detailing rates of pay and payday.

126.  Defendants knowingly and willfully operated their business with a policy of failing to provide timely detailed paystubs on each payday listing employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

127.  Defendants knowingly and willfully operated their business with a policy of not paying for the employees' purchase, repair, utilization and maintenance of delivery vehicles used to benefit their businesses.

*Adequacy*

128.  Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced and competent representing plaintiffs in both class action and wage and hour employment litigation cases.

*Superiority*

129.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class

members to redress the wrongs done to them.  Further, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

130.   Upon information and belief, defendants and other employers throughout the state violate the New York Labor Law.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIM

### COUNT I
**[Violations of the Fair Labor Standards Act—Minimum Wage
Brought on behalf of the Plaintiffs and the FLSA Collective]**

131.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

132. At all relevant times, upon information and belief, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. §§206(a) and 207(a).

133. At all relevant times, Defendants employed "employees" including Plaintiffs, within the meaning of FLSA, U.S.C. §§206(a) and 207(a).

134. Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

135. The FLSA provides that any employer engaged in commerce shall pay employees the applicable minimum wage. 29 U.S.C. § 206(a).

136. At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the collective action members, for some or all of the hours they worked.

137. The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

138. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

**COUNT II**
**[Violation of New York Labor Law—Minimum Wage**
**Brought on behalf of Plaintiffs and Rule 23 Class]**

139. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

140.   At all relevant times, plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

141.   At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the collective action members, for some or all of the hours they worked.

142.   Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them minimum wages in the lawful amount for hours worked.

143.   An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

### COUNT III
**[Violations of the Fair Labor Standards Act—Overtime Wage
Brought on behalf of the Plaintiffs and the FLSA Collective]**

144.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

145.   The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

146.   The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

147.   Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

148.   At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, *et seq.*, including 29 U.S.C. §§207(a)(1) and 215(a).

149.   The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

150.   Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

151.   Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

**COUNT IV**
**[Violation of New York Labor Law—Overtime Pay]**

152.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

153.   An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to one hundred percent (100%) under

NY Wage Theft Prevention Act, and interest.

154.   At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one half times the hourly rate the Plaintiffs and the class are entitled to.

155.   Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

156.   Defendants' failure to pay Plaintiffs was not in good faith.

## COUNT V
### [Violation of New York Labor Law—Spread of Time Pay]

157.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

158.   The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§190, *et seq.*, and §§650, *et seq.*, and New York State Department of Labor regulations §146-1.6.

159.   Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

## COUNT VI
### [Violation of New York Labor Law—Failure to Provide Meal Periods]

160.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

161.   The NYLL requires that employees provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts

between 1 p.m. and 6 a.m. NYLL§ 162.

162.  Defendants failed to provide meal periods required by NYLL §162 for every day that Plaintiffs and the Rule 23 class work or worked.

163.  Though the Department of Labor commissioner may permit a shorter time to be fixed for meal periods than hereinbefore provided, such permit must be in writing and be kept conspicuously posted in the main entrance of the establishment. No such permit is posted.

164.  Defendants' failure to provide the meal periods required by NYLL §162 was not in good faith.

## COUNT VII
### [Violation of New York Labor Law—Record-Keeping Requirements]

165.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

166.  Defendants did not maintain, establish and preserve Plaintiff's weekly payroll records for a period of not less than six years, as required by NYRR § 146-2.1.

167.  As a result of Defendants' unlawful conduct, Plaintiff has sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

168.  Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiffs' labor.

169.  Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs was not in good faith.

## COUNT VIII
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement]

170. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

171. The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

172. Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or her first day of employment.

173. Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to each Plaintiff even after the fact.

174. Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workweek that the violation occurred or continued to occur, up to $2,500, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT IX
## [Violation of New York Labor Law—New York Pay Stub Requirement]

175. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

176. The NYLL and supporting regulations require employers to provide detailed paystub

information to employees every payday. NYLL §195-1(d).

177.   Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiff's payday.

178.   Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $100 for each workweek of the violation, up to $2,500 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

### COUNT X
**[Breach of Implied Contract for Reimbursement of all Costs and Expenses of Bicycle/ Electric Bicycle, including Depreciation, Insurance, Maintenance and Repairs]**

179.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

180.   Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including bicycles and electric bicycles.

181.   Based on their personal experience and available information, Plaintiffs can document actual "out-of-pocket" vehicle related expenses of one thousand four hundred dollars ($1,400) per electric bicycle, which lasts around two years, four hundred dollars ($400) per battery, which lasts one and a half year, and two hundred fifty ($250) for the maintenance of the bicycle every year and a half.

182.   The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiffs to maintain the delivery vehicle in working condition.

183.   Plaintiffs purchased, maintained and repaired the vehicle at their own expense.

184. Plaintiffs performed these deliveries for the sole benefit of the Defendants.

185. Defendants neither explicitly nor implicitly requested Plaintiffs to cease the purchase of gasoline and/or the maintenance of the vehicle.

186. As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiffs would incur the expenses for bicycle purchase and vehicle maintenance, in exchange for compensation from Defendants for such expenses.

187. Defendants never compensated Plaintiffs for any expenses incurred from the purchase and maintenance of the electric bicycles, and the purchase of batteries. As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiff a reasonable sum under the afore-alleged facts.

188. Defendants owe Plaintiffs their overdue costs of delivery vehicles, cost of batter change, if applicable, and maintenance of the bicycle.

## COUNT XI
**[Breach of Implied Contract for Reimbursement of all Costs and Expenses of Motorcycle Depreciation, Insurance, Maintenance and Repairs of Motorcycle]**

189. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

190. For years, the General Service Administration ("GSA") has calculated and published a standard Privately Owned Vehicle reimbursement rate for motorcycles for its employees to use in computing the cost of operating a motorcycle for their employer's benefit.

191. In 2013, the GSA' the Privately Owned motorcycle mileage reimbursement rate is $0.535.

192. In 2014, the GSA's Privately Owned Motorcycle mileage reimbursement rate is $0.53.

193. From April 17, 2012 to December 31, 2012, the GSA's Privately Owned Motorcycle mileage reimbursement rate is $0.525.

194. From January 1, 2011 to April 16, 2012, the GSA's Privately Owned Motorcycle mileage reimbursement rate is $0.48.

195. Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including motorcycles.

196. Based on their personal experience and available information, Plaintiff deliverymen deliver an average of thirty (30) orders each day within the 60th Street and 120th Street area.

197. This averages to around one and a fifth (1.2) miles per round-trip order, or thirty six (36) miles each day.

198. Throughout the relevant period, Defendants required their delivery men, including Plaintiffs, to bear all of the "out-of-pocket" costs associated with their vehicles, including costs for gasoline, vehicle depreciation, insurance, maintenance and repairs.

199. The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiffs to purchase gasoline and maintain the delivery vehicle in working condition.

200. Plaintiffs maintained and repaired the vehicle at his own expense.

201. Defendants neither explicitly nor implicitly requested Plaintiffs to cease the purchase of gasoline and/or the maintenance of the vehicle.

202. As a result of the afore-alleged conduct of the parties, an implied contract arose between them in respect to which Plaintiffs agreed to incur expenses for

gasoline and vehicle maintenance, in exchange for compensation from Defendants for such expenses.

203.   Defendants never compensated Plaintiffs for any expenses incurred from the purchase of gasoline. As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiffs a reasonable sum under the afore-alleged facts.

204.   Defendants never compensated Plaintiffs for any expenses incurred from maintaining or repairing the delivery vehicle. As a result Defendants breached the implied contract by failing and refusing to pay Plaintiffs a reasonable sum under the afore-alleged facts.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and the FLSA Collective Plaintiffs and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a)   Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied proper hourly compensation and premium overtime wages;

b)   Certification of this case as a collective action pursuant to FLSA;

c)   Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d)   A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)   An injunction against Corporate Defendants that do business as Ichiro Restaurant, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)   An award of unpaid wages and minimum wages due Plaintiffs and the Collective Action members under the FLSA and New York Labor Law, compensation for the purchase and maintenance of delivery vehicles plus compensatory and liquidated damages in the amount of one hundred percent under NY Wage Theft Prevention Act, and interest;

g)   An award of unpaid overtime wages due under FLSA and New York Labor Law;

h)   An award of unpaid "spread of hours" premium due under the New York Labor Law;

i)   An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages, minimum wages and overtime compensation pursuant to 29 U.S.C. §216;

j)   up to two thousand five hundred dollars ($2,500) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

k)  up to two thousand five hundred dollars ($2,500) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

l)  An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to pay wages, minimum wages, overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

m)  An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

n)  The cost and disbursements of this action;

o)  An award of prejudgment and post-judgment fees;

p)  Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

q)  Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
December 31, 2014

TROY LAW, PLLC
*Attorneys for Plaintiffs*

John Troy (JT0481)
41-25 Kissena Boulevard Suite 119

Flushing, NY 11355
Tel: (718) 762-1324
Fax: (718) 762-1342
Email: johntroy@pllc.com

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of DEFENDANT(S), EMPLOYER

### ICHIRO

to pay me overtime wages and/or minimum wages as required under state and/or federal law including the Fair Labor Standards Act and also authorize the filing of this consent in the action(s) challenging such conduct.

LI, JI 李吉

PARTY PLAINTIFF                        Signature

_____

Date

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of DEFENDANT(S), EMPLOYER

ICHIRO

to pay me overtime wages and/or minimum wages as required under state and/or federal law including the Fair Labor Standards Act and also authorize the filing of this consent in the action(s) challenging such conduct.

WU, JIANHUI 吳建煇

PARTY PLAINTIFF

Signature

_____

Date

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of DEFENDANT(S), EMPLOYER

ICHIRO

to pay me overtime wages and/or minimum wages as required under state and/or federal law including the Fair Labor Standards Act and also authorize the filing of this consent in the action(s) challenging such conduct.

ZHANG, BIN

PARTY PLAINTIFF

_Bin Zhang_

Signature

_____

Date

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of DEFENDANT(S), EMPLOYER

ICHIRO

to pay me overtime wages and/or minimum wages as required under state and/or federal law including the Fair Labor Standards Act and also authorize the filing of this consent in the action(s) challenging such conduct.

ZHAO, DEPING 趙德平

PARTY PLAINTIFF

Signature  DE PING ZHAO

Date

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of DEFENDANT(S), EMPLOYER

ICHIRO

to pay me overtime wages and/or minimum wages as required under state and/or federal law including the Fair Labor Standards Act and also authorize the filing of this consent in the action(s) challenging such conduct.

ZHAO, KAI 越凯

PARTY PLAINTIFF

Zhao Kai 赵 凯

Signature

_____

Date