```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
JI LI, JIANHUI WU, BIN ZHANG, DE        :  14 Civ. 10242 (AJN) (JCF)
PING ZHAO, and KAI ZHAO, on behalf      :
of themselves and others similarly      :     MEMORANDUM
situated,                               :     AND ORDER
                                        :
              Plaintiffs,               :
                                        :
     - against -                        :
                                        :
ICHIRO RESTAURANT INC., ICHIRO          :
SUSHI INC., NEW ICHIRO SUSHI INC.,      :
and ICHIRO ASIAN FUSION, INC., all      :
d/b/a ICHIRO, JIAN PING CHEN, JIN       :
LI, HIU CHEN, and JUHANG WANG a/k/a     :
JAMES WANG,                             :
                                        :
              Defendants.               :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Plaintiffs Ji Li, Jianhui Wu, Bin Zhang, De Ping Zhao, and Kai Zhao bring this action alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") against the restaurant where they have worked, as well as against various related persons and entities. The plaintiffs now move for an order (1) conditionally certifying a collective action pursuant to 29 U.S.C. § 216(b); (2) requiring the defendants to produce contact information for all non-managerial employees who have worked for the defendants since December 31, 2011; (3) authorizing plaintiffs' counsel to send notice of this action to prospective members of the collective action; (4) tolling the statue of limitations for opt-in plaintiffs during the proposed ninety-day opt-in period; and (5) ordering the defendants to post the plaintiffs' proposed notice in conspicuous locations at the places where the prospective

1

collective action members worked or are now working.  The defendants[1] oppose the motion, arguing that the plaintiffs have not shown that the putative collective action members are similarly situated or have been subject to a common policy or plan.  For the reasons that follow, the plaintiffs' motion is granted in part.[2]

Background

The plaintiffs' operative complaint names four corporations and four individuals as defendants.  (First Amended Complaint ("1st Am. Compl."), ¶¶ 14-21, 28-37).  Ichiro Restaurant Inc., Ichiro Sushi Inc., New Ichiro Sushi Inc., and Ichiro Asian Fusion, Inc. (collectively, "Ichiro"), operate a "sit-down Japanese sushi restaurant" chain known as Ichiro Restaurant.  (1st Am. Compl., ¶¶ 22, 25).  Ichiro has one location on Second Avenue in Manhattan ("Ichiro 2nd Avenue") and another in White Plains, New York ("Ichiro White Plains").  (1st Am. Compl., ¶¶ 14, 16, 18, 20). Defendant Jian Ping Chen is an "owner, operator and/or officer" of Ichiro, formerly oversaw Ichiro 2nd Avenue, and currently manages Ichiro White Plains (1st Am. Compl., ¶¶ 30-32); Jin Li works as a receptionist and manager at Ichiro 2nd Avenue (1st Am. Compl., ¶ 34); Hui Chen is Ichiro's CEO and chairman (1st Am. Compl., ¶¶ 35-

---

[1] To date, only six of the eight defendants named in the complaint have filed appearances (Notice of Appearance dated June 18, 2015, docket no. 42); neither Jin Li nor Ichiro Restaurant Inc. have appeared in this matter.  References herein to "the defendants" are meant to indicate the defendants who have appeared.

[2] A United States Magistrate Judge has the authority to rule on a motion to authorize a collective action.  See Harper v. Government Employees Insurance Co., 826 F. Supp. 2d 454, 456 (E.D.N.Y. 2011); Mazur v. Olek Lejbzon & Co., No. 05 Civ. 2194, 2005 WL 3240472, at *2 n.1 (S.D.N.Y. Nov. 30, 2005).

36); and Juhang Wang is an "owner, operator, and/or officer" of Ichiro (1st Am. Compl., ¶ 37). The plaintiffs have all worked as delivery persons at Ichiro 2nd Avenue at various times between September 2010 and the filing of the First Amended Complaint. (1st Am. Compl., ¶¶ 9-13).

The plaintiffs initiated this suit in December 2014 and filed the First Amended Complaint in April 2015. The defendants' motion to dismiss the operative complaint is pending before the Honorable Alison J. Nathan, U.S.D.J.

In their present motion, the plaintiffs move to conditionally certify a collective action pursuant to 29 U.S.C. § 216(b) with respect to two causes of action. The proposed collective action would include "those hourly paid, non-managerial employees of the Defendants, including but not limited to or [sic] any other equivalent employee, who previously worked, or is currently working for the Defendants during the past three (3) years." (Memorandum of Law in Support of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice ("Pl. Memo.") at 7). The plaintiffs first allege that they were not paid the federally required minimum wage in violation of 29 U.S.C. § 206(a). (1st Am. Compl., ¶¶ 40, 133-39). Jianhui Wu states that, during his employment with the defendants, he was paid a flat monthly fee that fell below the hourly minimum wage. (Declaration of Jianhui Wu dated August 17, 2015 ("Jianhui Wu Decl."), ¶¶ 9-11). De Ping Zhao and Kai Zhao make substantially the same allegations. (Declaration of De Ping Zhao, dated August 18, 2015 ("De Ping Zhao Decl."), ¶¶

3

8-10; Declaration of Kai Zhao dated August 17, 2015 ("Kai Zhao Decl."), ¶¶ 7-8). The plaintiffs next allege that they were not paid overtime for hours they worked in excess of forty hours in one work week in violation of 29 U.S.C. §§ 207(a)(1) and 215(a). (1st Am. Compl., ¶¶ 40, 146-52; Jianhui Wu Decl., ¶ 13; De Ping Zhao Decl., ¶ 12; Kai Zhao Decl., ¶ 10). The plaintiffs submit that the defendants have "a straightforward uniform policy" of not paying their non-managerial employees minimum wage or overtime. (Pl. Memo. at 12).

Discussion

    A. Legal Standard

Under the FLSA, plaintiffs may elect to seek certification to proceed as a collective action. See 29 U.S.C. § 216(b); Iglesias-Mendoza v. LaBelle Farm, Inc., 239 F.R.D. 363, 367 (S.D.N.Y. 2007). The Second Circuit has endorsed a two-step method to certify FLSA collective actions. Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010). The first step -- the current stage of this litigation -- requires the district court to determine whether there are "similarly situated" potential plaintiffs who should receive notice of the pending FLSA action and be given an opportunity to join it. Id.

The relevant inquiry at this initial step is whether the plaintiffs have shown that the proposed members of the collective action are "similarly situated." See, e.g., Mendoza v. Casa de Cambio Delgado, Inc., No. 07 Civ. 2579, 2008 WL 938584, at *1 (S.D.N.Y. April 7, 2008); Realite v. Ark Restaurants Corp., 7 F.

4

Supp. 2d 303, 306 (S.D.N.Y. 1998).  The term "similarly situated" is not defined by the FLSA or its implementing regulations. Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997). However, courts have determined that the applicable test is whether the plaintiffs have established a sufficient "factual nexus" between their claims and the potential claims of the prospective collective action members.  See, e.g., Mentor v. Imperial Parking Systems, Inc., 246 F.R.D. 178, 181 (S.D.N.Y. 2007); Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005).  Courts may authorize sending notice if "plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  Myers, 624 F.3d at 555 (quoting Hoffman, 982 F. Supp. at 261).

In making this showing, plaintiffs can rely on the pleadings, but only when supplemented by other evidence, such as affidavits from named plaintiffs, opt-in plaintiffs, or other putative collective action members.  See Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007) ("[T]he appropriate inquiry . . . is whether the putative class alleged by Plaintiffs is similarly situated based on the pleadings and any affidavits."); Prizmic v. Armour, Inc., No. 05 CV 2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) ("[M]ere allegations in the complaint are not sufficient [to meet the plaintiff's burden on a motion for collective action certification]; some factual showing by affidavit or otherwise must be made." (quoting Camper v. Home Quality Management Inc., 200 F.R.D. 516, 519 (D. Md. 2000))).  A court

5

"need not evaluate the underlying merits of a plaintiff's claims to determine whether the plaintiff has made the minimal showing necessary for court-authorized notice," Damassia v. Duane Reade, Inc., No. 04 Civ. 8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006), nor "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations," Cunningham v. Electronic Data Systems Corp., 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (quoting Lynch v. United Services Automobile Association, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)). However, the evidence must be "sufficient to demonstrate that [current] and potential plaintiffs together were victims of a common policy or plan that violated the law." Realite, 7 F. Supp. 2d at 306. Furthermore, the plaintiff's supporting allegations must be specific, not conclusory. Morales v. Plantworks, Inc., No. 05 Civ. 2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006).

The second stage of collective active certification occurs after notice is sent, the opt-in period concludes, and discovery closes. At the second stage, which involves a "more stringent factual determination," Lynch, 491 F. Supp. 2d at 368, the Court must, "on a fuller record, determine whether a [] 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Myers, 624 F.3d at 555. If the opt-in plaintiffs are not similarly situated, the class "may be 'de-certified'" and "opt-in plaintiffs' claims may be dismissed without prejudice." Id.

B.  Conditional Certification

The defendants argue that the plaintiffs have not satisfied their burden to conditionally certify a collective action because, first, they have not identified an unlawful policy and, second, they have not established that other employees are similarly situated. (Defendants' Memorandum of Law Opposing Plaintiffs' 29 U.S.C. § 216(b) Motion for Collective Action and Rule 23 Class Action ("Def. Memo.") at 5-7).[3]

Both state and federal law mandate that employees be paid at least a minimum hourly rate.  29 U.S.C. § 206(a)(1); N.Y. Comp.

---

[3] The defendants raise other arguments that merit only brief attention.  First, the defendants assert that Ichiro Sushi Inc. sold its restaurant (presumably Ichiro 2nd Avenue) to New Ichiro Sushi Inc. and that the two companies are not related. (Def. Memo. at 3).  The plaintiffs, however, allege that the four corporate defendants named in their complaint form a single entity doing business as Ichiro.  (1st Am. Compl., ¶ 23).  Whether distinct entities may be treated as a "single employer" for purposes of FLSA liability is a factual inquiry.  See Perez v. Westchester Foreign Autos, Inc., No. 11 Civ. 6091, 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013) (describing factual considerations relevant to "single employer" inquiry).  The question of whether New Ichiro Sushi Inc. is an independent entity is therefore irrelevant for purposes of the present motion.  See PAL v. Sandal Wood Bar N Grill, No. 14 Civ. 301, 2015 WL 237226, at *1 (S.D.N.Y. Jan. 15, 2015) (refusing to consider arguments that go "to the underlying merit of plaintiffs' claims" made in opposition to motion to certify collective action).

Second, the defendants make the incomprehensible argument that the Ichiro 2nd Avenue restaurant itself "might be an asset owned by some of the defendants" that "does not possess the capacity to be sued." (Def. Memo. at 6).  The main problem with this argument is that the plaintiffs have sued not Ichiro 2nd Avenue, but rather the corporations and individuals that they allege operate that restaurant.

Finally, contrary to the defendants' characterization of the plaintiffs' motion in their opposition memorandum, the plaintiffs have not moved to have a class certified under Rule 23 of the Federal Rules of Civil Procedure.

Codes R. & Regs. ("NYCRR") tit. 12, § 146-1.2. During the period of the plaintiffs' employment with the defendants, the minimum hourly wage they were required to receive under the FLSA was $7.25. 29 U.S.C. § 206(a)(1). The New York minimum wage rate was $7.25 per hour until December 31, 2013, $8.00 per hour until December 31, 2014, and $8.75 per hour thereafter. 12 NYCRR § 146-1.2. The FLSA further requires that employers "compensate employees who work over forty hours per week with overtime pay at the rate of one and one-half times the regular rate." Wong v. Hunda Glass Corp., No. 09 Civ. 4402, 2010 WL 2541698, at *2 (S.D.N.Y. June 23, 2010); see also 29 U.S.C. § 207(a)(1).

The plaintiffs allege that the defendants willfully paid them less than the minimum wage and failed to pay them overtime. (1st Am. Compl., ¶ 2). The First Amended Complaint sets out both the hours each plaintiff worked during specific time-frames and the monthly or weekly compensation they received for that work. (1st Am. Compl., ¶¶ 54-62, 68-73, 80-85, 95-100, 110-113).[4] However,

---

[4] The plaintiffs have (unhelpfully) neglected to calculate the hourly pay each plaintiff received so as to demonstrate that their wages were illegally low. Instead, they simply provided the number of hours each plaintiff worked per week and the amount they were paid per week or month. Below I have calculated the approximate hourly rate for each plaintiff by taking a rough estimate of the weekly pay rate and dividing it by the number of hours worked:

1. For plaintiff Ji Li: $3.02 per hour between August 24, 2012, and December 22, 2012, $2.63 per hour between December 23, 2012, and January 31, 2013, and $3.01 per hour from February 1, 2013, to May 29, 2013 (1st Am. Compl., ¶¶ 54-62);

2. For plaintiff Jianhui Wu: $2.89 per hour between July 16, 2013, and September 30, 2013, $3.26 per hour between October 1, 2013, and September 5, 2014, and $3.59 per hour between September 6, 2014, to October 6, 2014 (1st Am. Compl., ¶¶ 68-

besides certain conclusory statements, the complaint does not include any factual support for the plaintiffs' contention that other employees of the defendants were subjected to the unlawful policy of not being paid minimum wage or overtime.  For example, the plaintiffs allege that the defendants engaged in "a pattern and practice of failing to pay [their] employees, including Plaintiffs, compensation for all hours worked, minimum wage, and overtime" (1st Am. Compl., ¶ 2), but provide no basis for concluding that any employees other than the plaintiffs experienced such treatment.

However, in support of this motion, the plaintiffs have also submitted the declarations of Jianhui Wu, De Ping Zhao, and Kai Zhao.  With respect to the hours each declarant worked and the compensation he received, these declarations repeat the allegations raised in the First Amended Complaint.  (See Jianhui Wu Decl., ¶¶ 4-10; De Ping Zhao Decl., ¶¶ 4-9; Kai Zhao Decl., ¶¶ 4-7).  But two of the declarations also provide information about other employees.  For example, Jianhui Wu states that he "personally know[s] of a kitchen worker, who . . . is paid [$2500] to [$2600] per month regardless of the hours he worked" and that he is "aware of about

---

73);

3. For plaintiff Bin Zhang: $2.16 per hour between May 1, 2012, and July 31, 2013, and $3.39 per hour between June 1, 2014, and July 15, 2014 (1st Am. Compl., ¶¶ 80-85);

4. For plaintiff De Ping Zhao: Between $2.33 and $3.02 per hour from May 1, 2012, and June 30, 2014 (1st Am. Compl., ¶¶ 95-100); and

5. For plaintiff Kai Zhao: $3.16 per hour from September 20, 2010, to April 30, 2012 (1st Am. Compl., ¶¶ 110-113).

four [] waitresses who are paid $600-$700 [] in cash in the beginning of the month regardless of the hours they worked." (Jianhui Wu Decl., ¶¶ 21-22). Kai Zhao adds that he "spoke to a Hispanic worker, who is similarly underpaid, which ranges from [$450] to [$550] per week regardless of the hours they [sic] worked, based on conversations." (Kai Zhao Decl., ¶ 16). Crucially, neither declaration states the number of hours these other employees worked or describes the circumstances in which these conversations or observations took place.

I have no trouble concluding that the complaint and the declarations submitted in support of this motion sufficiently establish the existence of a common policy or practice of not paying minimum wage or overtime. See Colon v. Major Perry Street Corp., No. 12 Civ. 3788, 2013 WL 3328223, at *6 (S.D.N.Y. July 2, 2013) (observing that it is "beyond dispute that courts regularly determine that two or three declarations corroborating each other constitute a sufficient amount of evidence" to establish a common policy, and collecting cases). The more challenging issue is determining whether the plaintiffs have shown that other employees are similarly situated.

The problems with the plaintiffs' submissions are two-fold. First, both the complaint and the supporting declarations lack even minimal detail about the plaintiffs' conversations with, and observations of, the defendants' other employees. See Reyes v. Nadaja, LLC, No. 14 Civ. 9812, 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015) ("[I]n this district [] where a plaintiff bases an

assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations."). The details that <u>are</u> included in the declarations (e.g., "[p]ersonally, I am aware of a waitress who is from Indonesia" (Jianhui Wu Decl., ¶ 25)) are irrelevant for purposes of establishing that other employees are similarly situated.

Second, and more importantly, the evidence the plaintiffs have provided regarding the defendants' treatment of their other employees is consistent with, if not suggestive of, a <u>lawful</u> policy, at least with regard to minimum wage and overtime. Take the example of the kitchen worker Jianhui Wu describes, who is paid at least $2,500 per month. (Wu Decl., ¶ 21). At $8.75 per hour ($13.125 for overtime), working sixty hours per week for four weeks the employee would earn $2,450, before taxes. Even the four waitresses being paid $600-700 per month could be earning minimum wage or more, depending on the number of hours they work. The point is that, based on the plaintiffs' evidence, there is simply no way to know whether other employees were similarly underpaid. Accordingly, the plaintiffs have failed to make even a modest showing that the proposed collective action members are similarly situated. See <u>Levinson v. Primedia Inc.</u>, No. 02 Civ. 2222, 2003 WL 22533428, at *2 (S.D.N.Y. Nov. 6, 2003) (denying conditional certification where plaintiffs failed to show that defendants' unlawful practice "extend[ed] beyond [plaintiffs'] own circumstances").

In their myopic push to certify as broad a class as possible, the plaintiffs have neglected to argue that their evidence would at least support certification of a class consisting only of delivery persons. Nevertheless, because the plaintiffs' evidence is consistent with regard to the treatment of delivery persons, and because the plaintiffs allege that other employees (including, potentially, other delivery persons) experienced similar treatment, I conclude that the certification of a collective action consisting of delivery persons is warranted. See Garcia v. Spectrum of Creations, Inc., __ F. Supp. 3d __, __, 2015 WL 2078222, at *7 (S.D.N.Y. 2015) (limiting conditional certification to employees with same job title); She Jian Guo v. Tommy's Sushi Inc., No. 14 Civ. 3964, 2014 WL 5314822, at *3-4 (S.D.N.Y. Oct. 16, 2014) (same). Because none of the allegations in the complaint or in the plaintiffs' declarations implicates Ichiro White Plains, certification is limited to delivery persons at Ichiro 2nd Avenue.

C. Production of Employee Contact Information

To facilitate the dissemination of notice to prospective collective action members, the plaintiffs have requested that the Court order the defendants to produce

> a Microsoft Excel data file containing contact information, including but not limited to last known mailing addresses, last known telephone numbers, last known email addresses, Social Security numbers, work locations, and dates of employment for all those individuals who have worked for the Defendants as [] non-managerial employee[s] between December 31, 2011 and the date this Court decides this Motion.

(Pl. Memo. at 18). Based on the broad remedial purposes of the FLSA, district courts have substantial discretion to authorize

notice and discovery in FLSA actions. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172-73 (1989) (authorizing district court's involvement in issuance of notice in FLSA collective action so as to enforce statute's "broad remedial goal"); accord Lynch, 491 F. Supp. 2d at 367. It is appropriate here to order the defendants to provide to plaintiffs' counsel the contact information of all potential opt-in plaintiffs. See Whitehorn v. Wolfgang's Steakhouse, Inc., No. 09 Civ. 1148, 2010 WL 2362981, at *3 (S.D.N.Y. June 14, 2010) (allowing pre-certification discovery and ordering production of putative class members' names, addresses, and last known telephone numbers).

A question remains, however, as to what contact information the Court should order the defendants to produce -- the plaintiffs have requested not only the names and addresses of potential plaintiffs, but also their e-mail addresses and telephone and social security numbers. Although the defendants do not specifically oppose the request to produce social security numbers, I nevertheless conclude that it is unnecessary to require that disclosure at this time. See generally Guan Ming Lin v. Benihana National Corp., 755 F. Supp. 2d 504, 514-15 (S.D.N.Y. 2010) (denying request to release social security numbers citing privacy concerns and absence of compelling need, and collecting authority). The plaintiffs have made no attempt to justify their request for this highly sensitive information. The defendants shall, however, produce the names, last known mailing addresses, last known telephone numbers, last known e-mail addresses, and dates of

13

employment for all delivery persons employed by the defendants at Ichiro 2nd Avenue between December 31, 2011, and the present.

D.   Mailing Notice to Potential Opt-in Plaintiffs

The plaintiffs next request that the Court order notice be issued to all potential collective action members.  Although the FLSA has no provision for issuing notice in a collective action, it is well settled that district courts have the power to authorize a plaintiff to send such notice to other potential plaintiffs.  See Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d 335, 336 (2d Cir. 1978) (per curiam) (court-authorized notice "comports with the broad remedial purpose of the [FLSA], . . . as well as with the interest of the courts in avoiding multiplicity of suits"); Hoffmann, 982 F. Supp. at 261.  "When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions" and ensure that putative plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  Fasanelli, 516 F. Supp. 2d at 323 (quoting Hoffman-La Roche, 493 U.S. at 170).  The plaintiffs have submitted a proposed notice, to which the defendants object in three respects.[5]

---

[5] The defendants provide a fourth objection: "[T]here exists further more defects and deficiencies in the Plaintiff's [sic] proposed notice that shall be corrected." (Def. Memo. at 10). The defendants, however, fail to state what the other "defects and deficiencies" are, leaving the Court with no clue as to the substance of their objection.

14

Under the FLSA, the statute of limitations is three years for willful violations and two years for non-willful violations. 29 U.S.C. § 255(a). Although the defendants indicate that they "vigorously dispute [that] violations of the FLSA, if any, were willful" (Def. Memo. at 10), they do not specifically argue that the two-year statute of limitations period should apply to the claims of any opt-in plaintiffs. Instead, the defendants argue that the proposed notice improperly refers to the date the plaintiffs filed their complaint, rather than three years from the date of this order, as the relevant time frame for opt-in claims. (Def. Memo. at 9). The defendants are correct that, because the three-year statute of limitations period for willful FLSA violations runs for each individual plaintiff until that individual opts into the action, notice is generally directed to those employed within three years of the date of the mailing of the notice. See 29 U.S.C. §§ 255(a), 256; Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011). However, "because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, 'with the understanding that challenges to the timeliness of individual plaintiff's actions will be entertained at a later date.'" Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) (quoting Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 410 (S.D.N.Y 2012)); see also Slamna v. API Restaurant Corp., No. 12 Civ. 757, 2013 WL 3340290, at *4 (S.D.N.Y. July 2, 2013); Raimundi

15

v. Astellas U.S. LLC, No. 10 Civ. 5240, 2011 WL 5117030, at *2 (S.D.N.Y. Oct. 27, 2011). On that basis, it is appropriate to calculate the three-year period for notice from the filing of the complaint, with the understanding that the defendants are free to later challenge the timeliness of individual plaintiffs' claims.[6]

Next, the defendants argue that opt-in plaintiffs should be directed to file their consent forms with the Clerk of Court for this District, rather than with plaintiffs' counsel. (Def. Memo. at 10). "The majority of courts [] have directed opt-in plaintiffs to mail the consent forms to plaintiffs' counsel." She Jian Guo, 2014 WL 5314822, at *5. However, "in order to ensure that opt-in Plaintiffs understand that they may choose their own counsel," Hernandez v. Fresh Diet Inc., No. 12 Civ. 4339, 2012 WL 5936292, at *2 (S.D.N.Y. Nov. 21, 2012), the plaintiffs must include the following language in the notice they send to potential opt-in plaintiffs:

> "You have the right to retain an attorney of your choosing to represent you in this action or another action against the defendants. If you choose to retain another attorney or to represent yourself, you may join this lawsuit by submitting an appropriate consent form directly to the Clerk of Court by the deadline indicated herein."[7]

Finally, the defendants ask that the opt-in period be limited

---

[6] There is, therefore, no need at this time to decide whether the statute of limitations should be tolled for hypothetical opt-in plaintiffs.

[7] The plaintiffs shall include this language as a stand-alone paragraph immediately following the paragraph in their proposed notice that begins, "If you fail to mail a signed Consent to Join Lawsuit form . . . ."

16

to forty-five days from the date notice is mailed. (Def. Memo. at 10). The plaintiffs offer no reply to the defendants' position and provided no substantive arguments in their initial memorandum as to why their proposed ninety-day opt-in period is appropriate. (E.g. Pl. Memo. at 9, 17). "While some courts have granted up to 90 day opt-in periods, they generally do so where the period is agreed upon between the parties or special circumstances require an extended opt-in period." Whitehorn, 767 F. Supp. 2d at 452 (collecting cases). Because the plaintiffs have not pointed to any special circumstances or advanced any meaningful arguments in support of their proposed opt-in period, I will grant the defendants' request. Accordingly, the plaintiffs must amend their notice to indicate that opt-in plaintiffs must consent to join the action within forty-five days from the date notice is mailed.

In summary, the plaintiffs' request for authorization to mail the proposed notice and consent forms is granted, but the plaintiffs must make the following amendments: (1) the notice must make clear that the collective action is limited to individuals who worked as delivery persons at Ichiro 2nd Avenue; (2) the notice must include the language provided above regarding the right to be represented by other counsel; and (3) the deadline for filing the consent form is forty-five days from the date notice is mailed.

E. Translation of Notice

The plaintiff has proposed translating and sending the proposed notice and consent forms in English, Chinese, and Spanish. (Pl. Memo. at 17). The defendants do not object. As such, the

17

notice and consent forms should be translated and posted in English, Chinese, and Spanish. The plaintiff must file certifications from the persons retained to translate the forms.

### F. Request to Post Notice

The plaintiffs ask that the Court order the defendants to post the notice in "conspicuous locations" at the defendants' restaurants. The defendants do not object. "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." Whitehorn, 767 F. Supp. 2d at 449 (collecting cases). Thus, the defendants shall post notice in a conspicuous location at Ichiro 2nd Avenue.

### Conclusion

For the foregoing reasons, the plaintiffs' motion (Docket No. 53) is granted in part, as set forth above, and the proposed notice and consent forms, as modified, shall be disseminated within thirty days of the date of this order. Within two weeks of the date of this order, the defendants shall produce the names, last known mailing addresses, last known telephone numbers, last known e-mail addresses, and dates of employment for all delivery persons employed by the defendants at Ichiro 2nd Avenue between December 31, 2011, and the present. Within thirty days of the date of this order, the defendants shall post the notice form, as modified.

SO ORDERED.

*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           November 5, 2015


Copies mailed this date to:

John Troy, Esq.
Troy Law, PLLC
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355

David Yan, Esq.
Law Offices of David Yan
136-20 38th Ave., Suite 11E
Flushing, NY 11354

Jian Ping Chen
3907 Prince St., #5C
Flushing, NY 11354