USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:    4/30/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────┐
│                                          │
│  Ji Li, et al.,                          │
│                                          │
│                    Plaintiffs,           │
│                                          │
│         –v–                              │
│                                          │
│  New Ichiro Sushi, Inc., et al.,         │
│                                          │
│                    Defendants.           │
│                                          │
└─────────────────────────────────────────┘
```

14-cv-10242 (AJN)

FINDINGS OF FACT &
CONCLUSIONS OF
LAW

```
┌─────────────────────────────────────────┐
│                                          │
│  Roberto Hidalgo,                        │
│                                          │
│                    Plaintiff,            │
│                                          │
│         –v–                              │
│                                          │
│  New Ichiro Sushi, Inc., et al.,         │
│                                          │
│                    Defendants.           │
│                                          │
└─────────────────────────────────────────┘
```

15-cv-414 (AJN)

FINDINGS OF FACT &
CONCLUSIONS OF
LAW

ALISON J. NATHAN, District Judge:

Plaintiffs Ji Li, Jianhui Wu, Bin Zhang, De Ping Zhao, and Kai Zhao (the "*Ji Li*

Plaintiffs") bring claims under the Fair Labor Standards Act ("FLSA") and the New York Labor

Law ("NYLL") against Defendants Juhang Wang, New Ichiro Sushi, Inc., Jian Ping Chen, and

Ichiro Asian Fusion; and Plaintiff Roberto Hidalgo brings claims under the FLSA and the NYLL

against Defendant New Ichiro Sushi.

The Court held a bench trial beginning on April 22, 2019.  On April 26, 2019, at the close

of trial, the Court concluded that Plaintiffs in the *Ji Li* case had not met their burden of proof

with respect to: (1) all claims against Defendants Jian Ping Chen and Ichiro Asian Fusion (the

"Westchester Defendants"); (2) all of Plaintiff Ji Li's claims; and (3) all claims against Defendant Juhang Wang, to the extent they were premised on Defendant Juhang Wang being Plaintiffs' employer while they worked at Ichiro Sushi.  *See* Trial Tr. 514:1–520:21; *see Ji Li* Dkt. No. 255 at 1.

The Court ordered post-trial briefing on the remaining claims.  In the *Ji Li* case, what remained was: (1) whether Defendants Juhang Wang and New Ichiro Sushi are liable as a successor to Ichiro Sushi, under a theory of successor liability, for any FLSA and NYLL violations of Plaintiffs while they worked at Ichiro Sushi; and (2) whether Defendants Juhang Wang and New Ichiro Sushi are liable for any FLSA and NYLL violations for Plaintiffs Kai Zhao and Jianhui Wu, who worked for New Ichiro Sushi for a period of time.  In the *Hidalgo* case, what remained was: (1) whether New Ichiro Sushi is liable as a successor to Ichiro Sushi, under a theory of successor liability, for any FLSA and NYLL violations of Plaintiff Hidalgo while he worked at Ichiro Sushi; and (2) whether New Ichiro Sushi is liable for any FLSA and NYLL violations for Plaintiff Hidalgo, who worked for New Ichiro Sushi for a period of time. The Court ordered post-trial briefings on these matters.  *See Ji Li* Dkt. No. 255.

The Court now issues its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure on the remaining claims.  The Court concludes, after carefully considering the evidence before it, the parties' written submissions, the arguments of counsel, and the controlling law on the issues presented, that Defendants New Ichiro Sushi and Juhang Wang are not liable, under a theory of successor liability, for any labor violations of Ichiro Sushi.  Plaintiffs Kai Zhao and Jianhui Wu have not met their burden of proof with respect to their claims against Defendants Juhang Wang and New Ichiro Sushi.  The Court also concludes that Plaintiff Roberto Hidalgo is entitled to compensation for unpaid work at New

Ichiro Sushi.

## I.   BACKGROUND

The Court assumes familiarity with these related cases.  *See, e.g.*, *Hidalgo* Dkt. No. 116.

After the Court denied summary judgment in both cases, on November 15, 2018, the Court held

a status conference and all parties agreed to a joint bench trial.  *See Hidalgo* Dkt. No. 135.

The Court held a five-day bench trial beginning on April 22, 2019 in accordance with its

Individual Practices in Civil Cases for non-jury proceedings.  The Court heard live testimony

from Plaintiffs Roberto Hidalgo, Jianhui Wu, Bin Zhang, De Ping Zhao, and Kai Zhao;

Defendants Juhang Wang and Jian Ping Chen; and non-party Yuyi Wang.  *See generally* Trial

Tr.  Consistent with this Court's Individual Rules, the Court accepted direct testimony via

declarations from these individuals.  In addition, all parties submitted documentary exhibits.

Plaintiff Ji Li did not appear to provide testimony.  *See Ji Li* Dkt. No. 251 at 2.

After the trial, the parties submitted post-trial briefs on the remaining claims.  *Ji Li* Dkt.

No. 273 ("Ji Li Br."); *Hidalgo* Dkt. No. 169 ("Hidalgo Br."); *Hidalgo* Dkt. No. 173 ("New Ichiro

Br.").  The Westchester Defendants also moved for sanctions against the *Ji Li* Plaintiffs.  *Ji Li*

Dkt. No. 258.  The *Ji Li* Plaintiffs submitted an opposition to the Westchester Defendants'

motion, and the Westchester Defendants submitted a reply brief.  *Ji Li* Dkt. Nos. 276, 281.  At

the close of trial, the Court explained that the parties were required to provide "citation to the

trial transcript.  Parties must clearly state their findings and facts and conclusions with specificity

addressing all elements of the claim.  Boilerplate and conclusory language [would] not be

credited, and [the parties] must specifically identify from the trial record support for [their]

assertions."  Trial Tr. at 521:16–21.

## II.   FINDINGS OF FACT

The following section constitutes the Court's Findings of Fact pursuant to Federal Rule of Civil Procedure 52(a)(1).  These Findings of Fact are drawn from witness testimony submitted in the form of affidavits, witness testimony at trial, and the parties' trial exhibits.  To the extent that any finding of fact reflects a legal conclusion, it shall to that extent be deemed a conclusion of law, and vice versa.

### A.    Credibility

The Court makes the following credibility determinations.

First, the Court finds the *Ji Li* Plaintiffs' testimony was not credible.  As the Court already explained at the close of trial, the direct testimony of the *Ji Li* Plaintiffs that Defendant Jian Ping Chen was the "boss" or "lady boss" at Ichiro Sushi was completely contradicted during cross-examination.  *See* Trial Tr. 515:3–7.  None of the *Ji Li* Plaintiffs identified Jian Ping Chen as a "boss" at the restaurant in court, even though they had sworn to this testimony in their affidavits.  Plaintiffs' declarations also affirmed that Jian Ping Chen was the wife of Hui Chen, and that their daughter, Jin Li, also worked at the restaurant as a cashier.  But, again, these facts were all contradicted by Plaintiffs during cross-examination.  And, the contradictions were not limited to the portions of *Ji Li* Plaintiffs' affidavits that discussed the Westchester Defendants. For example, Plaintiff Kai Zhao's declaration stated that Juhang Wang was his boss beginning in 2011, but, on cross-examination, he appeared confused by this statement, and said it was not correct.  Trial Tr. 225:4–23.

Although all of the *Ji Li* Plaintiffs swore under oath in Court as to the accuracy and truthfulness of their direct testimony affidavits, *see* Trial Tr. 65:19–22, 67:9–68:13 (Jianhui Wu); 140:1–3, 141:9–142:13 (Bin Zhang); 174:14–176:6 (De Ping Zhao); 208:19–210:13 (Kai Zhao), it became very apparent at trial that the *Ji Li* Plaintiffs were simply unfamiliar with what was

allegedly their own direct testimony.  Plaintiff Zhao explained that the *Ji Li* Plaintiffs' drafted affidavits were not translated from English to their native language "sentence to sentence," but, rather, only "the general meaning" was explained to them.  Trial Tr. at 215:10–13.  Plaintiff Zhang also testified that he "[did not] know" and "[did not] understand" what was in his own affidavit.  Trial Tr. at 149:2–13.  Plaintiff Kai Zhao stated that he only "kn[e]w the main idea, the main part," of what was in his affidavit, "but as far as the details . . . I'm not really clear."  Trial Tr. at 226:20–22.  Accordingly, the *Ji Li* Plaintiffs did not have any basis of knowledge for several significant pieces of their affidavits, which they swore again to in Court, making their testimony entirely unreliable.

Second, the Court finds Plaintiff Hidalgo's testimony to be credible.  Unlike the *Ji Li* Plaintiffs, Plaintiff Hidalgo's in-court testimony did not conflict with his direct testimony affidavit.  Plaintiff Hidalgo was clear about what he did and did not remember regarding his work at Ichiro Sushi and New Ichiro Sushi.  *See, e.g.*, Trial Tr. at 40.

Finally, the Court generally finds Defendant Juhang Wang, and his brother, Yuyi Wang to be credible witnesses.  However, there were two points where Juhang Wang and Yuyi Wang were not credible.  First, Yuyi Wang was not credible when he discussed his specific rate of pay. He testified that, while working at Ichiro, every week, he received some of his pay in cash, and some of his pay via check.  However, he then could not remember the breakdown between the amount paid to him by check and the amount paid to him in cash, or whether those amounts varied week to week.  *See* Trial Tr. 318:20–22; 319:5–15; 322:24–323:19.  The Court finds Yuyi Wang's explanation implausible.  Second, and relatedly, the Court does not find Juhang Wang's testimony regarding the hours his brother worked at New Ichiro to be credible.  First, Juhang Wang testified that his brother was a full-time employee at Ichiro and New Ichiro.  *See* Trial Tr.

at 390:3–7.  Then, however, Juhang Wang was presented with his prior deposition testimony, where he stated that he did not give his brother "any steady hours" and that he only helped out when it was busy.  Trial Tr. 394:10–23.  Juhang Wang, when confronted with this conflicting testimony, stated that "[m]ost of the time [his brother] work[ed] as a full-time worker, but for a period of time he did come over to help."  Trial Tr. 394:22–23.  The Court is not exactly certain what this means—but regardless, it does not credit Juhang Wang's testimony regarding his brothers' hours worked at New Ichiro.

## B.      Factual Determinations

With the above credibility determinations in mind, the Court finds that the following relevant facts concerning these cases have been established by a preponderance of the evidence. The Court only addresses facts it considers relevant to the resolution of these cases.

New Ichiro Sushi began operations on September 17, 2014.  *See* Trial Tr. at 293:21–22; New Ichiro Ex. 21 ¶ 24.  The restaurant was located at 1694 Second Avenue, New York, New York.  New Ichiro Ex. 21 ¶ 10.  Prior to September 17, 2014, a restaurant existed in the same location, named Ichiro Sushi—where Defendant Juhang Wang worked as a sushi chef.  *See id*. Hui Chen was the owner of Ichiro Sushi.  The restaurant was not closed for any period of time when it transitioned from Ichiro Sushi to New Ichiro Sushi.  *See* Trial Tr. 129:7–10; 202:19–20; 235:12–13.  The space was renovated when the restaurant transitioned from Ichiro Sushi to New Ichiro Sushi.  *See* Trial Tr. 390:21–24; New Ichiro Ex. 21. ¶¶ 27, 28.  Defendant Juhang Wang was the owner of New Ichiro Sushi.  *See* New Ichiro Ex. 21 ¶ 4.  New Ichiro Sushi purchased various assets and the lease from Ichiro Sushi.  *See id.*  New Ichiro Sushi was able to negotiate the purchase price of the restaurant down to $50,000, due to the slowdown of business near the Second Avenue subway construction.  *See* New Ichiro Ex. 21 ¶¶ 20–22.

When Defendant Juhang Wang worked as a sushi chef at Ichiro Sushi, his own pay was adequate under the FLSA and NYLL, and he was not aware of any potential labor violations by the restaurant.  New Ichiro Ex. 21 ¶¶ 13–15, 34.  Based on his knowledge of pay and hours while working at Ichiro, Juhang Wang did not think there would be any obligations by the prior employer to employees for unpaid work.  Trial Tr. 467:7–20.  He approached a lawyer to determine whether Ichiro owed any former employees any money, and concluded that Ichiro did not have any outstanding obligations.  *See id.*

All Plaintiffs were employees of Ichiro Sushi.  Only Plaintiffs Kai Zhao, Jianhui Wu, and Roberto Hidalgo worked at New Ichiro Sushi for a period of time.  Plaintiff Hidalgo worked approximately 72 hours per week and was paid $550 per week when he worked for New Ichiro Sushi.   Hidalgo Ex. 12 ¶¶ 5, 6, 12.  Plaintiff Hidalgo did not receive the spread-of-hours pay when he worked a shift of more than ten (10) hours, which occurred six (6) days per week.  Hidalgo Ex. 12 ¶ 7.  Plaintiff Hidalgo never received a statement of hours worked or wages paid.  Hidalgo Ex. 12 ¶ 6.  Plaintiff Hidalgo worked at New Ichiro Sushi through October 2, 2014.  *See* Hidalgo Ex. 12 ¶ 3.

When Plaintiffs Kai Zhao and Jianhui Wu worked for New Ichiro Sushi, their hours worked were recorded in two ways—by electronic record and by mechanical record.  *See Ji Li* Pls.' Exs. 1 and 2.  Plaintiffs received wage statements from New Ichiro Sushi.  *See* Pls.' Ex. 1 (statement for Jianhui Wu); Pls.' Ex. 2 (statement for Kai Zhao).

## III.    CONCLUSIONS OF LAW

Before addressing specific questions regarding Defendants' liability, the Court notes that the threshold requirements for bringing suit under the FLSA and NYLL in this Court have been met.  The Court has subject-matter jurisdiction over the FLSA claims under 28 U.S.C. §§ 1331

and 1337.  The Court has supplemental jurisdiction over the NYLL claims under 28 U.S.C. §

1367 because they form part of the same case or controversy.  Venue is proper in the Southern

District of New York.  Defendants were engaged in interstate commerce within the meaning of

the FLSA and thus are subject to its wage and overtime provisions.

### A.        Successor Liability of New Ichiro Sushi and Juhang Wang

The majority of recovery in these related cases is premised on the potential successor

liability of New Ichiro Sushi and Juhang Wang for alleged labor violations of Ichiro Sushi, Inc.

and Hui Chen.

The Court has already determined what test will apply for successor liability in these

related cases—the substantial continuity test.[1]  *See Hidalgo* Dkt. No. 116 at 19.  "Under [the

substantial continuity] test, a company that purchases another company's assets may be liable as

a successor if there was 'substantial continuity between the enterprises.'" *Battino v. Cornelia*

*Fifth Ave., LLC*, 861 F. Supp. 2d 392, 401 (S.D.N.Y. 2012) (quoting *Fall River Dyeing &*

*Finishing Corp. v. NLRB,* 482 U.S. 27, 43 (1987)).

In assessing whether a successor business may be held liable for the employment

violations of its predecessor under the substantial continuity test, courts look to three factors: (1)

whether the new business has sufficient "continuity in operations and work force of" the

previous business to qualify as its successor; (2) whether there was "notice to the successor-

employer of its predecessor's legal obligation"; and (3) whether "[the predecessor is able] to

provide adequate relief directly," such that it would be unfair to place that obligation on the

successor.  *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 151 (3d Cir. 2014) (internal

---

[1] During summary judgment proceedings, Defendant New Ichiro Sushi argued that the traditional test for successor
liability should apply.  Under New York and "traditional" common-law, "a corporation that purchases the assets of
another corporation is generally not liable for the seller's liabilities" unless one of four exceptions applies.  *New*
*York v. Nat. Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006).  Plaintiff Hidalgo did not argue that any of the
exceptions applied in this case, and the Court agreed.  *See Hidalgo* Dkt. No. 116 at 19.  Therefore, even if the Court
were to apply the traditional test, it would still conclude that there is no successor liability.

quotation marks omitted).  Courts in this district routinely expand this test into nine factors, by turning the first factor—the degree of continuity—into seven sub-factors.  *See, e.g.*, *Bautista v. Beyond Thai Kitchen, Inc.*, No. 14-cv-4335 (LGS), 2015 WL 5459737, at *5 (S.D.N.Y. Sept. 17, 2015) (listing the nine factors as: "(1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product." (internal quotation marks omitted)).

Although posited as a multi-factor test, courts have held that "notice and the ability of the predecessor to provide relief"—factors that collectively address whether successor liability would be equitable under the circumstances—are "indispensable" to the inquiry.  *Xue Ming Wang v. Abumi Sushi Inc.*, 262 F. Supp. 3d 81, 89–91 (S.D.N.Y. 2017) (collecting cases).

"For purposes of successor liability, the successor 'is the party that actually purchases the assets of the predecessor and continues the predecessor's business.'"  *Bautista*, 2015 WL 5459737, at *5 (quoting *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985)).  However, "an aggrieved party can still seek to impose liability on an individual associated with the successor entity under a corporate veil-piercing theory."  *Lin v. Toyo Food, Inc.*, No. 12-cv-7392 (KMK), 2016 WL 4502040, at *5 (S.D.N.Y. Aug. 26, 2016).  Under New York law, "plaintiffs seeking to pierce the corporate veil must establish: '(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that

such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'" *Merino v. Beverage Plus Am. Corp.*, No. 10-cv-706 (JSR) (RLE), 2011 WL 3739030, at *5 (S.D.N.Y. Apr. 12, 2011) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)).

Finally, "[t]he party advocating for successor liability bears the burden of proof." *Bautista*, 2015 WL 5459737, at *5. "That rule applies to all portions of the 'substantial continuity' test, including the notice requirement." *Abumi Sushi*, 262 F. Supp. 3d at 92; *Battino*, 861 F. Supp. 2d at 405.

### 1.    Plaintiffs' Claims

The Court now addresses whether Juhang Wang and New Ichiro Sushi are liable for Plaintiffs' FLSA and NYLL claims under a theory of successor liability. The Court concludes that neither are liable under a theory of successor liability.

### a.    Juhang Wang

First, the Court addresses whether Juhang Wang can be held liable under a theory of successor liability.[2] The Court concludes that he cannot be held liable.

As discussed above, "[f]or purposes of successor liability, the successor 'is the party that actually purchases the assets of the predecessor and continues the predecessor's business.'" *Bautista*, 2015 WL 5459737, at *5 (quoting *Musikiwamba*, 760 F.2d at 753). In this case, New Ichiro purchased the assets of the predecessor business, Ichiro Sushi. While "an aggrieved party can still seek to impose liability on an individual associated with the successor entity under a corporate veil-piercing theory," the *Ji Li* Plaintiffs make no such argument in their post-trial brief. *Lin*, 2016 WL 4502040, at *5. The *Ji Li* Plaintiffs merely state that Juhang Wang was a "100% owner of New Ichiro Sushi, Inc.," but make no argument for why corporate veil-piercing

---

[2]  Juhang Wang is only named as a defendant in the *Ji Li* case.

is appropriate. *Ji Li* Br. at 11. Accordingly, Juhang Wang cannot be held liable for any FLSA or NYLL violations of Ichiro Sushi under a theory of successor liability.

### b.    New Ichiro Sushi

The Court now addresses whether New Ichiro Sushi can be held liable under a theory of successor liability. The Court concludes that it cannot be held liable.

The Court begins with the factor that is "indispensable" to the inquiry—notice. *Bautista*, 2015 WL 5459737, at *5; *Abumi Sushi*, 262 F. Supp. 3d at 91 ("[T]he incentives created by a 'substantial continuity' test in which notice . . . [is an] optional factor[] would leave asset purchasers (and, arguably, the economy) worse off, while at best leaving employees with pre-sale FLSA claims in the same position."). To prove that a successor had actual notice of a predecessor's employment violations at the time of purchase, a plaintiff must point to evidence that the successor either knew of an actual claim that had been filed against the predecessor, or was aware of the existence of the labor violation (whether or not any claim had been filed at the time of purchase). *See Abumi Sushi*, 262 F. Supp. 3d at 92 (collecting cases); *Battino*, 861 F. Supp. 2d at 405–06.

In the instant case, the Court concludes that New Ichiro Sushi had no actual notice of any FLSA and NYLL violations at Ichiro. Plaintiffs have provided no evidence that any suit was pending against Ichiro or had ever been filed against it for labor violations. The Court has already concluded that Juhang Wang, the sole owner of New Ichiro Sushi, was not Plaintiffs' employer or manager while they worked at Ichiro Sushi. *See* Trial Tr. at 520:17–21. He did not have control over Plaintiffs' compensation or other personnel matters. *See* Trial Tr. at 520:11–14. As to whether Wang was nevertheless aware of labor violations at Ichiro Sushi, he testified that his own pay was adequate under the FLSA, and he was not aware of any potential labor

violations of Ichiro Sushi.  New Ichiro Ex. 21 ¶¶ 13–15, 34; Trial Tr. at 467:7–20.

Even assuming Defendants Juhang Wang and New Ichiro Sushi lacked actual knowledge of any labor violations at Ichiro, Plaintiffs argue that Defendants had constructive knowledge of such violations.  *See Ji Li* Br. at 17; *Hidalgo* Br. at 16.[3]  To show a buyer was constructively on notice of FLSA violations, it is not enough to merely demonstrate that it could have discovered such violations with the exercise of additional diligence.  Instead, a plaintiff, as a general matter, must point to the existence of certain "red flags"—such as a suspiciously good deal or an uncharacteristically quick closing—that would have put a reasonable buyer on notice that it should inquire further into the circumstances of the transaction.  *See New Ichiro Sushi*, 2017 WL 4712789, at *12 (explaining the proper scope of constructive notice); *Abumi Sushi,* 262 F. Supp. 3d at 93–94.

Here, the Court concludes that Plaintiffs have not met their burden of showing that New Ichiro Sushi was on constructive notice of any FLSA violations at Ichiro.  Plaintiffs do not make any arguments in their post-trial briefs about the purchase price of Ichiro's assets.  Nor do they explicitly identify other "red flags" that should put have put New Ichiro Sushi on constructive notice.  Plaintiffs only argue that: the sale of assets from Ichiro to New Ichiro was conducted in cash, with one lawyer representing the buyer and the seller, and that New Ichiro Sushi did not retain employment records of Ichiro Sushi.  *See Ji Li* Br. at 12; *Hidalgo* Br. at 9.  While this transactional arrangement may have been unusual, Plaintiffs fail to identify why this would constitute a "red flag" that should have put New Ichiro on constructive notice of labor violations. And, given the circumstances, it was perfectly reasonable for New Ichiro to not retain the employment records of Ichiro Sushi, as Wang had experienced a record of lawful compensation

---

[3] The Court has already rejected Plaintiffs' overly broad interpretation of constructive notice.  *See Hidalgo v. New Ichiro Sushi, Inc.*, No. 15-cv-414 (AJN), 2017 WL 4712789, at *12 (S.D.N.Y. Sept. 27, 2017).

at Ichiro, and thus he believed there was no reason to maintain those records.  Accordingly,

Plaintiffs have not met their burden of showing that New Ichiro Sushi was on constructive notice

of any labor violations by Ichiro Sushi.

The Court's findings as to notice are sufficient for the Court to conclude that New Ichiro

Sushi is not liable as a successor to Ichiro Sushi under a theory of successor liability.  *See Abumi*

*Sushi*, 262 F. Supp. 3d at 89–90.  Accordingly, the Court does not need to address the other

factors.

For all of these reasons, Defendant New Ichiro Sushi cannot be held liable for any

potential labor violations by Ichiro Sushi.

### B.    Remaining Claims

The Court now addresses the remaining claims—whether there were potential labor

violations when Plaintiffs Kai Zhao, Jianhui Wu, and Roberto Hidalgo worked at New Ichiro

Sushi, beginning on September 17, 2014.

As noted above, Plaintiffs commenced this action under the FLSA and the NYLL.  The

FLSA requires employers to pay their employees a legally mandated minimum wage, which,

during the time at issue in this case, was set at $7.25 per hour.  29 U.S.C. § 206(a)(1)(C).  Under

the NYLL, the New York minimum wage was $8.00 per hour until December 31, 2014, during

part of the relevant period.  N.Y. Lab. Law § 652.  The FLSA and NYLL also have various

overtime provisions.  *See* 29 U.S.C. §§ 207, 213; NYLL §§ 650 *et seq.*  Under both the FLSA

and NYLL, an employee must be paid at the rate of one and one-half times the employee's

regular hourly rate for each hour the employee works in excess of 40 hours in a given workweek.

29 U.S.C. § 207(a)(2)(C); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4.

Plaintiffs also raise a spread of hours claim and a wage statement and notice claim.  On

each day in which the beginning and end of the workday are more than 10 hours apart, a worker is entitled to "one additional hour of pay at the basic minimum hourly rate."  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(a).  This provision applies regardless of the employee's hourly salary.  *Id*. § 146-1.6(d).  In addition, under the NYLL, employers must provide employees with certain wage and hour notices and statements.  N.Y. Lab. Law § 195(1)(a); N.Y. Lab. Law § 195(3).

### 1.    Kai Zhao and Jianhui Wu's Claims

Plaintiffs Kai Zhao and Jianhui Wu maintain that they were not paid properly while working for New Ichiro Sushi.  An employee-plaintiff under the FLSA bears the burden of proving that she performed work for which she was not properly compensated.  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016).  A similar standard applies to unpaid compensation claims under the NYLL.  *See Canelas v. World Pizza, Inc.*, No. 14-cv-7748 (ER), 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017); N.Y. Lab. Law § 196-a(a).

Plaintiffs have not met their burden of demonstrating that they were not properly paid while working for New Ichiro Sushi.  As discussed above, the Court does not credit Plaintiff Kai Zhao and Jianhui Wu's testimony.  Plaintiffs also point to some documentary evidence: discrepancies between the mechanical time records of Kai Zhao and Jianhui Wu and their electronic time records.  *See Ji Li* Br. at 4–6.  Plaintiffs argue that this discrepancy was so that Defendants could "reduce Plaintiff Kai Zhou's [and Jianhui Wu's] hours recorded per week below 40 by hook or by crook, in order to avoid paying overtime."  *Id.* at 6; *id.* at 8.  However, Plaintiffs provide no basis for this assertion.  Absent any additional evidence from Plaintiffs, the Court is left with two conflicting time records—but an incomplete story as to what they mean. This is insufficient for Plaintiffs to meet their burden of demonstrating that Plaintiffs were not

paid proper minimum wage or overtime compensation.  For the same reasons, Plaintiffs have not

met their burden for a spread of hours claim under the NYLL.  There is evidence in the record

that Plaintiffs received wage statements.  *See* Pls.' Ex. 1 (statement for Jianhui Wu); Pls.' Ex. 2

(statement for Kai Zhao).  And there is no credible evidence in the record that Plaintiffs did not

receive weekly paystubs.  Accordingly, Plaintiffs are not entitled to damages under the NYLL

wage and hour notice and statement laws.

 For all of these reasons, Plaintiffs Kai Zhao and Jianhui Wu have not met their burden of

proof with respect to any labor violation claims against New Ichiro Sushi or Juhang Wang.

### 2. Roberto Hidalgo's Claims

#### a. Overtime

 Plaintiff Roberto Hidalgo maintains that he was not paid properly while working for New

Ichiro Sushi through October 2, 2014.  *See* Hidalgo Ex. 12 ¶ 3.  As discussed above, the Court

found that Plaintiff Hidalgo worked approximately 72 hours per week, and was paid $550 per

week.  Hidalgo Ex. 12 ¶¶ 5, 6, 12.

 Under the FLSA, there is a rebuttable presumption that a weekly salary covers 40 hours

worked in a week.  *See Hernandez v. Jrpac Inc.*, No. 14-cv-4176 (PAE), 2016 WL 3248493, at

*32 (S.D.N.Y. June 9, 2016); *Moon v. Kwon*, 248 F. Supp. 2d 201, 207 (S.D.N.Y. 2002).  And

under the NYLL, the regular rate for a restaurant employee who is not paid on an hourly basis is

determined by "dividing the employee's total weekly earnings, not including exclusions from the

regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee

during the work week."  N.Y. Comp. Codes R. & Regs. tit. 12, §146-3.5.  Accordingly, Plaintiff

Hidalgo's regular rate of pay is calculated by dividing his weekly pay by 40 hours.  During the

relevant period of September 17, 2014 to October 2, 2014, when Plaintiff Hidalgo worked for

New Ichiro Sushi, he was paid $13.75 per hour ($550 divided by 40 hours).  Therefore, Plaintiff

Hidalgo is entitled to 32 hours of overtime per week, at a rate of $20.63 per hour ($13.75

multiplied by 1.5), which totals $660.16 per week.  Because Plaintiff Hidalgo was not paid for

overtime for the two weeks he worked for New Ichiro Sushi, he is entitled to $1,320.32 in

overtime.

### b.      Spread of Hours

Plaintiff Roberto Hidalgo did not receive the spread-of-hours premium, or any additional

pay, when he worked a shift of more than ten (10) hours, which occurred six (6) days per week.

Hidalgo Ex. 12 ¶ 7.  Under the New York Code Rules and Regulations, on each day in which the

beginning and end of the workday are more than 10 hours apart, a worker is entitled to "one

additional hour of pay at the basic minimum hourly rate."  N.Y. Comp. Codes R. & Regs. tit. 12,

§ 146-1.6(a).  Accordingly, Plaintiff Hidalgo is entitled to $96 in spread-of-hours pay ($8.00

multiplied by six days, multiplied for two weeks).

### c.      Wage and Notice Statements

During the relevant period, NYLL § 195(1)(a) required employers to provide employees

with notices informing them of their rate of pay at the time of hiring and on or before February 1

of each subsequent year of employment.  A second provision, NYLL § 195(3), required

employers to provide employees with a wage statement with each payment of wages.  There is

nothing in the record that suggests New Ichiro Sushi provided Plaintiff Hidalgo with these

required statements.  Plaintiff Hidalgo stated that he never received a statement of hours worked

or wages paid.  Hidalgo Ex. 12 ¶ 6.  Accordingly, Plaintiff Hidalgo is entitled to damages on

these claims.

During the relevant period, an employee who did not receive a wage notice within 10

business days of his first day of employment was entitled to recover $50 for each week of work that the violations occurred, up to a maximum of $2,500.  N.Y. Lab. Law § 198(1-b) (eff. Apr. 9, 2011 to Feb. 26, 2015); *Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12-cv-9353 (PAC), 2015 WL 1881080, at *4 n.7 (S.D.N.Y. Apr. 24, 2015) (applying the provisions and penalties in place at the time of employment).  Plaintiff Hidalgo is therefore awarded $100 ($50 multiplied by two weeks) for wage notice damages.

NYLL § 195(3), requires employers to provide employees with a wage statement with each payment of wages.  During the relevant period, an employee who did not receive such statements could recover $100 per work week that the violations occurred, up to a maximum of $2,500.  N.Y. Lab. Law §198(1-d) (eff. Apr. 9, 2011 to Feb. 26, 2015).  Accordingly, Plaintiff Hidalgo is awarded $200 for wage statement damages ($100 multiplied by two weeks).

### d.    Liquidated Damages

Plaintiff Hidalgo seeks to recover liquidated damages.  The FLSA provides for liquidated damages equal to the unpaid wages and overtime recovered.  29 U.S.C. § 216(b).  An employer may avoid liquidated damages if she can show that she acted "in good faith and that [she] had reasonable grounds for believing that [her] act or omission was not a violation of the" FLSA.  *Id.* § 260.  The burden is on the employer to demonstrate good faith.  *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008).  To meet this burden, an employer must have taken active steps to ascertain and comply with the FLSA's requirements.  *Id.*  The Second Circuit has characterized the employer's burden as "a difficult one," and emphasized that "double damages are the norm and single damages the exception."  *Id.*  (alteration omitted) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)).  The NYLL provides for liquidated damages on identical terms to the FLSA.  N.Y. Lab. Law §§ 198(1-a),

663(1); *see also Romero v. Anjdev Enterprises, Inc.*, No. 14-cv-457 (AT), 2017 WL 548216, at

*11 (S.D.N.Y. Feb. 10, 2017) ("Courts treat the federal and state good-faith standards as

analogous.").

With regards to Plaintiff Hidalgo, Defendant New Ichiro Sushi has not pointed to any

evidence of good faith.  The Court will therefore award liquidated damages.  Plaintiff Hidalgo is

therefore entitled to $1,320.32 in liquidated damages.

### e.     Prejudgment Interest

Under the NYLL, the Court must award prejudgment interest in addition to liquidated

damages.  N.Y. Lab. Law § 198(1-a) ("In any action instituted in the courts upon a wage claim

by an employee . . . in which the employee prevails, the court shall allow such employee to

recover . . . prejudgment interest as required under the civil practice law and rules, and . . . an

additional amount as liquidated damages . . ."); *id.* §663(1) (same).  The New York prejudgment

interest rate applies.  *McLean v. Garage Mgmt. Corp.*, Nos. 10-cv-3950, 09-cv-9325 (DLC),

2012 WL 1358739, at *11 (S.D.N.Y. Apr. 19, 2012).  Under N.Y. C.P.L.R. § 5004, prejudgment

interest runs at the rate of nine percent (9%) per annum simple interest.  *Id.*

When claims that are reduced to judgment have arisen on different dates, the Court may

compute prejudgment interest from an appropriate single median date.  *See McLean,* 2012 WL

1358739, at *11 ("[P]rejudgment interest on the plaintiffs' NYLL unpaid overtime wage

damages shall be computed at a rate of nine (9) percent per annum from a single reasonable

intermediate date.").  Thus, prejudgment interest on plaintiffs' back pay awards should be

computed from the median of each relevant period to the date of judgment.  For Plaintiff

Hidalgo, it should be calculated from September 27, 2014.

## IV.    SANCTIONS

The Court now addresses the Westchester Defendants' motion for sanctions.  *Ji Li* Dkt. No. 258.  The Westchester Defendants' motion seeks sanctions pursuant to 28 U.S.C. § 1927, the Court's inherent powers, and Rule 11 of the Federal Rules of Civil Procedure.  The Court has reviewed the Westchester Defendants' motion, the *Ji Li* Plaintiffs' opposition, *Ji Li* Dkt. No. 276, and the Westchester Defendants' reply, *Ji Li* Dkt. No. 281, and concludes that sanctions are warranted pursuant to § 1927 against the *Ji Li* Plaintiffs' counsel for their failure to withdraw the *Ji Li* Plaintiffs' claims after the close of evidence at trial.

 "Under § 1927, '[a]ny attorney [or other person] . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'"  *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 71, 79 (2d Cir. 2000) (first and third alteration in original) (quoting 28 U.S.C. § 1927).  A court also maintains "inherent powers" to impose sanctions.  *See United States v. Seltzer,* 227 F.3d 36, 39 (2d Cir. 2000); *see also Ransmeier v. Mariani,* 718 F.3d 64, 68 (2d Cir. 2013) (noting that "a federal court . . . may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991)).  To impose sanctions under either § 1927 or the Court's inherent powers, the Court "must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes."  *Revson,* 221 F.3d at 79 (quoting *Agee v. Paramount Communications Inc.,* 114 F.3d 395, 398 (2d Cir. 1997)).  The attorney or party's "bad faith" is a key inquiry when determining whether to award sanctions.  *Id.*

The Court may also impose sanctions pursuant to Federal Rule of Civil Procedure 11(b).  "Rule 11 'explicitly and unambiguously imposes an affirmative duty on each attorney to conduct

a reasonable inquiry into the viability of a pleading before it is signed.'" *Continental Casualty Company v. Marshall Granger & Company, LLP,* No. 11-cv-3979 (CS), 2017 WL 1901969, at *6 (S.D.N.Y. May 9, 2017) (quoting *Gutierrez v. Fox,* 141 F.3d 425, 427 (2d Cir. 1998)). "Sanctions may be—but need not be—imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.,* 698 F.3d 58, 63 (2d Cir. 2012). While only counsel may be sanctioned pursuant to § 1927, both counsel and parties may be sanctioned pursuant to the Court's inherent powers and Rule 11. *See United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO,* 948 F.2d 1338, 1345 (2d Cir. 1991).

The Westchester Defendants argue that the *Ji Li* Plaintiffs' counsel should be sanctioned pursuant to § 1927 for (1) persisting in pursuing their claims after the Westchester Defendants put them on notice that they had misidentified Jian Ping Chen and had no colorable claims against the Westchester Defendants; (2) persisting in pursuing their claims after ample evidence at trial demonstrated that the *Ji Li* Plaintiffs had no colorable claims against the Westchester Defendants; and (3) filing a motion *in limine* seeking permission for Plaintiff Ji Li to testify via videoconference. *See generally Ji Li* Dkt. No. 258-1.

The Court concludes that there is not "clear evidence" that the *Ji Li* Plaintiffs' counsel acted with the requisite bad faith to warrant sanctions under § 1927 with respect to the first of these categories. The Westchester Defendants argue that they put the *Ji Li* Plaintiffs on notice as early as September 20, 2015 that they had misidentified Jian Ping Chen and, in fact, had no colorable claims against the Westchester Defendants. *See Ji Li* Dkt. No. 258-1 at 5–8. However, the *Ji Li* Plaintiffs' counsel point to several factors that explain why they named the Westchester

Defendants as defendants in this action.  They note that the *Ji Li* Plaintiffs informed them that their employer owned another restaurant in White Plains and the last name of one of their bosses was Chen.  *Ji Li* Dkt. No. 276 at 3–4.  Based on this information, the *Ji Li* Plaintiffs' counsel conducted research and identified a restaurant in White Plains—Ichiro Asian Fusion—owned by someone whose last name is Chen that sports a similar logo to the Ichiro Sushi on Second Avenue and was referenced in a *New York Times* article as "the White Plains outpost of a popular restaurant on Manhattan's Upper East Side."  *Id.*; *see also Ji Li* Dkt. No. 277 ¶¶ 4–8; *Ji Li* Dkt. No. 277-3.  They further explain that though they subsequently learned from the Westchester Defendants that Jian Ping Chen is a woman—and not a man, as they had initially believed—they did not find this to be fatal to their claims against the Westchester Defendants.  *Ji Li* Dkt. No. 277 ¶ 9.  Rather, this led them to believe she was the person the *Ji Li* Plaintiffs described as "lady boss," because plaintiffs do not, in their experience, recognize people by names but rather by faces.[4]  *Ji Li* Dkt. No. 276 at 4; *Ji Li* Dkt. No. 277 ¶¶ 9, 10.  In light of this explanation, the Court credits the *Ji Li* Plaintiffs' counsel's assertion that naming the Westchester Defendants as defendants in this case "was a mistake, but not [done] out of bad faith."  *Ji Li* Dkt. No. 276 at 4.

There is likewise no clear evidence that the *Ji Li* Plaintiffs' counsel acted with the requisite bad faith to warrant sanctions under § 1927 with respect to the third of these categories.  Indeed, the Westchester Defendants' argument that the motion for Plaintiff Ji Li to testify at trial via videoconference was motivated by bad faith is based on pure speculation and is unsupported by any clear evidence in the record.

---

[4] While the Westchester Defendants point out that they produced a photograph of Jian Ping Chen in their pretrial submissions, *see Ji Li* Dkt. No. 281 at 6; *Ji Li* Dkt. No. 281-7, the Court does not find it clear evidence of bad faith that the *Ji Li* Plaintiffs' counsel failed to use this photograph to confirm the identify of Jian Ping Chen as the "lady boss" with the *Ji Li* Plaintiffs prior to trial.

However, with respect to the second category, the Westchester Defendants have pointed to clear evidence that the *Ji Li* Plaintiffs' claims were entirely meritless, and their counsel acted improperly—and, indeed, in bad faith—in not withdrawing them after the close of evidence at trial. *See Revson,* 221 F.3d at 79. As the Court stated at the end of trial and again above, *see supra* Section II.A, the direct testimony of the *Ji Li* Plaintiffs that Jian Ping Chen was the "boss" or "lady boss" at Ichiro Sushi on Second Avenue was completely contradicted by *all* of the *Ji Li* Plaintiffs' testimony during cross-examination. Plaintiff Bin Zhang, for example, did not even know that he was suing Jian Ping Chen, or Ichiro Asian Fusion, despite claiming in his affidavit to have personal knowledge of Jian Ping Chen's involvement in Ichiro Sushi on Second Avenue. Trial Tr. at 152:4–21. Plaintiff De Ping Zhao explicitly stated during his testimony that Jian Ping Chen was not the "female boss" at the restaurant. Trial Tr. at 177:25–178:10. Moreover, Kai Zhao explained during his testimony that the paragraph in his affidavit that stated in English that he called Jian Ping Chen the "lady boss" had never been fully translated into Chinese for him. Tr. at 219:11–226:22. Rather, only the "general meaning" of his declaration had been translated for him. Trial Tr. 215:10–19. Ultimately, none of the *Ji Li* Plaintiffs' live testimony regarding Jian Ping Chen aligned with what they stated they knew about her in their affidavits.

However, even after ample evidence was adduced at trial that the Westchester Defendants were *not* employers of the *Ji Li* Plaintiffs, after the Westchester Defendants' counsel made a motion pursuant to Rule 50 of the Federal Rules of Civil Procedure, and after the Court implored the *Ji Li* Plaintiffs' counsel to "make sure [he felt] comfortable proceeding as an officer of the Court with an obligation to be candid," the *Ji Li* Plaintiffs' counsel nonetheless continued to press the *Ji Li* Plaintiffs' claims against the Westchester Defendants. *See* Trial Tr. at 254:4–256:13. The *Ji Li* Plaintiffs' counsel have failed, both at trial and in their opposition to the

sanctions motion, to provide any explanation for why they continued to press forward with their entirely meritless claims against the Westchester Defendants after the close of evidence at trial, and the Court concludes, in light of the above, that doing so was in bad faith.  Accordingly, the Court sanctions the *Ji Li* Plaintiffs' counsel for continuing to press forward with claims against the Westchester Defendants after their counsel, Mr. Xue, made a Rule 50 motion.

The Westchester Defendants also move for sanctions against both the *Ji Li* Plaintiffs' counsel and the *Ji Li* Plaintiffs themselves pursuant to this Court's inherent powers.  Although the Court believes there is a strong basis to find sanctions against the *Ji Li* Plaintiffs' counsel pursuant to these powers as well, and a court may award such sanctions in addition to § 1927 sanctions, *see Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*, No. 14-cv-2065 (AJN), 2015 WL 13654007, at *34 n.15 (S.D.N.Y. Mar. 26, 2015), because the Court concludes that the Westchester Defendants are entitled to § 1927 sanctions, it declines to decide whether the *Ji Li* Plaintiffs' counsel should also be sanctioned pursuant to its inherent powers.  The Court likewise will not sanction the *Ji Li* Plaintiffs themselves pursuant to its inherent powers, because the requisite bad faith is lacking with respect to the only conduct attributable to them.  The Westchester Defendants argue that when the *Ji Li* Plaintiffs were confronted with Jian Ping Chen at trial, they all knew she was not the "lady boss," but they nonetheless "allowed their counsel to file a Complaint that . . . was filled with blatantly untrue facts."  *Ji Li* Dkt. No. 258-1 at 13. However, this argument turns the relevant timing on its head.  Indeed, because the *Ji Li* Plaintiffs did not know that Jian Ping Chen was not the "lady boss" until they were confronted with her at trial, they could not have known that the Complaint contained "blatantly untrue facts" *at the time of its filing*.  Accordingly, the *Ji Li* Plaintiffs lacked the bad faith necessary to warrant sanctions pursuant to the Courts' inherent powers with respect to the only conduct the Westchester

Defendants claim is attributable to them.

Finally, the Westchester Defendants move for sanctions against both the *Ji Li* Plaintiffs' counsel and the *Ji Li* Plaintiffs themselves pursuant to Rule 11 of the Federal Rules of Civil Procedure.  They argue that sanctions are warranted pursuant to Rule 11 because "it is clear that [the *Ji Li*] Plaintiffs and [the *Ji Li*] Plaintiffs' Counsel lacked any evidentiary support for the FLSA minimum wage claims when they filed the Complaint and further refused to withdraw their claims after multiple requests to do so."  *Ji Li* Dkt. No. 258-1 at 15.  The Court has already concluded that neither the *Ji Li* Plaintiffs' counsel's conduct nor that of the *Ji Li* Plaintiffs at the time of filing warrants the imposition of sanctions pursuant to § 1927 and its inherent powers, and this analysis applies with equal force to sanctions pursuant to Rule 11.  Even if there is any basis to sanction the *Ji Li* Plaintiffs' counsel pursuant to Rule 11 for their refusal to withdraw their claims after the close of evidence at trial, the Court again declines to decide whether the *Ji Li* Plaintiffs' counsel should also be sanctioned pursuant to this Rule because it has already concluded that the Westchester Defendants are entitled to § 1927 sanctions for this conduct.

In sum, the Court sanctions the *Ji Li* Plaintiffs' counsel for continuing to press forward with claims against the Westchester Defendants after their counsel, Mr. Xue, made a Rule 50 motion.  The Westchester Defendants seek $59,254.53 in attorneys' fees and costs.  The Court grants the *Ji Li* Plaintiffs' request to respond to this amount, and they shall do so within fourteen days.  The Westchester Defendants may respond to the *Ji Li* Plaintiffs' submission seven days thereafter.

## V.    CONCLUSION

For the reasons provided above, the Court concludes that New Ichiro Sushi and Juhang Wang are not liable, under a theory of successor liability, for any potential labor violations of

Ichiro Sushi.  Plaintiffs Kai Zhao and Jianhui Wu are not entitled to any payments from New Ichiro Sushi or Juhang Wang.  Plaintiff Roberto Hidalgo is awarded $1,320.32 in overtime damages, $96 in spread of hours damages, $1,320.32 in liquidated damages, and $300 ($100 plus $200) in statutory damages.  The Court awards prejudgment interest at the rate of nine percent (9%) per annum simple interest.  The prejudgment interest should be calculated from September 27, 2014.

The Court sanctions the *Ji Li* Plaintiffs' counsel for continuing to press forward with claims against the Westchester Defendants after their counsel, Mr. Xue, made a Rule 50 motion, but it reserves judgment on the amount.  The *Ji Li* Plaintiffs shall respond to the amount the Westchester Defendants are seeking in sanctions within fourteen days.  The Westchester Defendants may respond to the *Ji Li* Plaintiffs' submission seven days thereafter.

The Clerk of Court is respectfully directed to enter judgment and close these cases.

SO ORDERED.


Dated:  April 30, 2020
        New York, New York

_____
     ALISON J. NATHAN
  United States District Judge